No. 12,882.

OMAN *v.* MISHLER.
(22 P. [2d] 132)

Decided May 8, 1933.

Mr. GEORGE A. PUGHE, Mr. JOE H. ROSS, for plaintiff in error.

Mr. E. G. VANATTA, for defendant in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error is hereinafter referred to as Oman, defendant in error as Mrs. Mishler and her husband as Mr. Mishler.

Mrs. Mishler was plaintiff below. She alleged in her complaint that she and her husband were partners in the sheep business; that the husband and Oman had conspired to defraud her of her interest therein; and that in furtherance of their plan Mr. Mishler had conveyed to Oman all the partnership property. She prayed for a cancellation of that transfer, an accounting from both, and judgment for the amount found due her. On trial to a jury she had a verdict for approximately $6,000, and to review the judgment entered accordingly Oman alone prosecutes this writ.

Oman denied the material allegations of the complaint and alleged that he had purchased the property in good faith and at market value. Mr. Mishler admitted the "plan and scheme" to defraud his wife, made some corrections as to the amount and value of the property involved, asserted that he had transferred it to Oman on the latter's agreement to pay $10,500 therefor, alleged that Oman had paid only $2,000, and offered to submit to such judgment as should seem just to the court. He further filed a cross complaint against Oman wherein he sought judgment for $15,000 in favor of the partnership. On the trial this cross complaint was withdrawn.

Of the six assignments but two are seriously argued or require any consideration: (1) That the verdict was unsupported; (2) that it violated instruction No. 10. But since the second depended upon the evidence we examine both under 1. But one instruction, presumably said No. 10, is abstracted.

No doubt arises from this record that the evidence supports the verdict and that the judgment must stand, unless defendants were discharged by Mrs. Mishler's "release," which we refer to as Exhibit 1.

Serious trouble was brewing between Mr. Mishler and his wife and they separated. During Mrs. Mishler's absence from the state this "plan and scheme," which stripped her of her property, was concocted and effectuated. She started suit and the conspirators tolled her

into Salt Lake City, Utah, and into the office of an attorney of their selection. She was very solicitous about a reconciliation with her husband and his return to Colorado to straighten out the "mess" in which their affairs were involved. Apparently as a result of their conference the Mishlers settled their personal differences and were remarried. Exhibit 1 had been drawn, quite apparently, for the signature of both. It reads:

"Release

"That for and in consideration of the sum of $50.00 and other good and valuable considerations, receipt of which are hereby acknowledged, we the undersigned, do hereby release E. A. Oman from any and all liability by reason of the facts and things as set out in that certain action pending in the District Court of Moffat County, State of Colorado, entitled Bessie Mishler, Plaintiff, vs. J. L. Mishler and E. A. Oman, defendants, and it is agreed that as far as the said E. A. Oman is concerned the said action shall be dismissed with prejudice; the execution of this Release is not an admission that the said E. A. Oman committed any of the acts as set out in said action, but the object hereof is to compromise and settle the above case without resorting to trial.

"Witness our hands at Salt Lake City, Utah, this 3rd day of December, 1929.

(Signed)    Bessie Mishler.

"County of Salt Lake⎫
                    ⎬ss.
      State of Utah  ⎭

"On this 3rd day of December, 1929, personally appeared before me........ ........and................ the signors of the above entitled instrument, who duly acknowledged to me that they executed the same.

..........................
Notary Public."

Mrs. Mishler admitted that the signature looked like hers but denied that she signed it. Other witnesses testi-

fied that she did. It is reasonably clear that Mr. Mishler would have signed but for his wife's caution and protest. Of the $50 consideration mentioned therein, Mrs. Mishler received but $15, and that apparently by way of reimbursement for expenses in coming to Salt Lake City. Instruction No. 10 reads: "The Court instructs the Jury that if you find from a preponderance of the evidence that the plaintiff voluntarily executed and delivered to the defendant, E. A. Oman, Defendant's Exhibit No. 1, purporting to be a release, then your verdict shall be in favor of defendant, E. A. Oman." It thus appears that the sole material question is, Was the jury entitled under the evidence to find Exhibit No. 1 was *no* release? No reply brief was filed. Oman did not plead Exhibit 1, but that failure is not raised.

Counsel for Oman cite authorities on the effect of a release "proven," the evidence required to set it aside, and the rule that a compromise "made in good faith" will not be set aside for "mere inadequacy." These are inapplicable. The question here was the existence of the release and its good faith. Mrs. Mishler denied signing it and that question was for the jury. Even if signed the jurors might properly have disregarded it as wholly devoid of good faith, for the entire record impeaches it. Weight of evidence does not necessarily depend upon volume or number of witnesses. *Clark v. Aldenhoven*, 26 Colo. App. 501, 143 Pac. 267.

If plaintiff in error is correct as to this release he was entitled to an instructed verdict. It is doubtful if the record shows a proper request therefor. If so, no such error was assigned and no such ground appears in his motion for a new trial.

Again, gross inadequacy of consideration for a release may itself constitute evidence of fraud. *Weber v. Head Camp,* 60 Colo. 529, 154 Pac. 728. A consideration of $15 for the settlement of a $6,000 liability is about as "grossly inadequate" as will be found in the books.

Finally, this dispute comes down to a question of

attacking a verdict based upon conflicting evidence. That such a verdict cannot be overturned here for that reason is fundamental.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE BOUCK concur.