Harry W. NICHOALDS, Jr., Compass Corporation and Trilon Oil Company, Inc., Appellants,

v.

Charles E. McGLOTHLIN, Appellee.

No. 7315.

United States Court of Appeals Tenth Circuit.

April 20, 1964.

George J. Francis, Denver, Colo., for appellants.

Robert D. Means (of Holland & Means), Denver, Colo. (Robert E. Holland, Stanley H. Johnson and H. A. Nikkel, Denver, Colo., on the brief), for appellee.

Before LEWIS and SETH, Circuit Judges, and KERR, District Judge.

KERR, District Judge.

Appellee instituted this diversity action in the United States District Court for Colorado against Harry W. Nichoalds, Jr., Compass Corporation and Trilon Oil Company, Inc., seeking judgment in the amount of $13,600.00.

The complaint was in three counts. The first count avers that misrepresentations were made by Nichoalds to induce appellee to enter into an agreement for the purchase and sale of stock, and that on February 2, 1961, McGlothlin elected to rescind the transaction, tendered his stock in Compass Corporation to Nichoalds and asked for the return of his money. The second and third counts, made in the alternative, are also grounded in misrepresentation. McGlothlin alleges that subsequent to his giving notice of rescission, defendants proceeded to sell all the assets in the Compass Corporation in which McGlothlin had purchased shares of stock, and that this transfer was done without giving notice to McGlothlin and without complying with corporate laws, all in furtherance of a conspiracy to deprive McGlothlin of his equity in the Compass Corporation. The third count demands an accounting and other equitable relief.

The following salient facts are established by the evidence: Compass Corporation owned the ranch properties involved in this dispute. All of the shares of stock of Compass were owned by Nichoalds, who was its principal officer. In addition to Compass Corporation, Nichoalds was the principal officer and in control of Trilon Oil Company, Inc., owning 15,000 of the 25,000 outstanding shares of Trilon stock. Nichoalds conducted his

business operations by this three-cornered arrangement, using Trilon to finance Compass. Loans were made by Trilon to Compass for operating expenses of the ranch. The corporate activities were actions of Nichoalds, who had the full and complete control of both corporations.

At one time McGlothlin was employed by the United States Forest Service. Having had experience in ranching, though little business experience, McGlothlin wished to invest his savings in ranch property. He met Nichoalds through a Billings, Montana, realtor, with whom Nichoalds had listed for sale the ranch property located near Lame Deer, Montana. The list price was $89,-000.00. At the time of the proposed sale, title to the ranch was in the name of Compass Corporation. Following preliminary negotiations McGlothlin examined the ranch property, the cattle, and the equipment, and then consulted Nichoalds regarding the ranch holdings. Nichoalds stated that he valued the entire property at $140,000.00 or $145,000.00. He represented that the liabilities against the ranch consisted of $36,666.00 owed to the seller of the ranch; $2,000.00 payment due on 440 acres of additional lands acquired after the purchase of the ranch; and $1,000.00 balance due on recently acquired bulls. He further represented that there was adequate money to pay all expenses.

McGlothlin offered $15,000.00 which Nichoalds accepted and a contract for sale was executed December 20, 1960. Under the terms of the agreement 2,310 shares of Compass Corporation stock, valued at $6.50 per share, were issued to McGlothlin for the $15,000 agreed upon but not yet paid. The balance of 5,690 shares of Compass stock were placed in escrow to assure McGlothlin that 50% of the shares would become his property. Nichoalds retained 8,000 shares in accordance with the intention that each party would eventually own 50% of the Compass Corporation.

Following these negotiations and the execution of the contract McGlothlin learned from Nichoalds that there was an additional loan of $27,000.00 due a bank in Hardin, Montana, which Nichoalds had not previously disclosed. McGlothlin learned that even when the parties were negotiating for the sale of the property Nichoalds was dealing with the Farm Home Association for a loan to pay off the $27,000.00 obligation. McGlothlin protested to Nichoalds regarding this undisclosed indebtedness and Nichoalds thereupon re-evaluated the stock from $6.50 to $4.85 per share.

On December 30, 1960, McGlothlin delivered his first check to Nichoalds in the amount of $12,000.00 and took over as manager of the ranch at a salary of $250.00 per month, plus housing allowance. Immediately thereafter McGlothlin learned that a herd of cattle, purchased by Nichoalds in Nebraska, had been branded with the ranch brand and were pledged to the bank at Hardin, Montana, as security for the $27,000.00 loan. McGlothlin testified that he had been led to believe that the cattle were owned by the Compass Corporation. The evidence revealed, however, that the cattle had been acquired by Nichoalds in his own name. Shortly after McGlothlin took over the management of the ranch numerous bills arrived, among which were a lumber bill for $900.00, a bill for $1,-000.00 due on bulls, and $3,300.00 due on ranch equipment.

In January 1961 McGlothlin learned for the first time that Compass Corporation had no cash and that operating expenses had to be paid from the funds of the Trilon Company. Contrary to Nichoalds' previous representations that there was adequate money to operate the ranch, he finally admitted on February 2, 1961, that there was not enough money to operate the ranch and that further stock would have to be issued. McGlothlin then told Nichoalds that he wished to rescind the agreement for the purchase and sale of stock, and that he wanted his money returned to him. On February 12, 1961, Nichoalds and McGlothlin met in Sheridan, Wyoming, and prepared a written Memorandum Agreement for McGloth-

lin's withdrawal from the ranch and corporate operations, Nichoalds agreeing to return the $13,600.00 on or before November 15, 1961. Nichoalds took the agreement to consult with his own lawyer, but never returned it to McGlothlin and did not sign it. On February 13, 1961, McGlothlin's attorney notified Nichoalds of his rescission of the agreement, offered to return the stock, and demanded return of the purchase price. At the time the Memorandum was drawn up, McGlothlin agreed to leave the ranch one week after March 9, 1961. He fulfilled his part of the agreement though he did not hear from Nichoalds until the following May.

 The crux of the decision is whether the misrepresentations were such as to justify rescission. There is little doubt that Nichoalds failed to fully and fairly disclose a number of important material facts. There was no disclosure of the $27,000.00 obligation, nor of the debts which McGlothlin discovered after making the initial payment. After McGlothlin discovered the true conditions he gave notice of his election to rescind. Rescission is, of course, a proper remedy where, as here, the contract has been induced by misrepresentation and fraud. In Brown v. Alkire, 295 F.2d 411, at page 414, 10 Cir., the court stated:

> " * * * Generally, fraud consists of some deceitful practice or willful device resorted to for the purpose of inducing another, in reliance upon it, to surrender property or legal rights. 37 C.J.S. Fraud § 1 (1943); 23 Am. Jur. Fraud and Deceit § 2 (1939); Black's Law Dictionary 788, (4th Ed. 1951). It connotes perjury, falsification, concealment and misrepresentation. Knauer v. United States, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500."

To the same effect, in Junius Const. Co. v. Cohen, 257 N.Y. 393, 178 N.E. 672, at page 674, Judge Cardozo, Chief Justice of the New York Court of Appeals, said:

> " * * * The seller was not at liberty in good conscience to list among the incumbrances the two unopened streets, which, even if opened, would leave the value unimpaired, and, while listing these, suppress the existence of a third unopened street, which, if opened, would destroy the value for the use intended by the buyer. No one can say with reason that the plaintiff would have signed this contract if informed of the likelihood that its factory, when built, would be bisected by a street, to say nothing of the possibility that a permit to build would be denied altogether. Misrepresentation, if there was any, as to a risk so vital was something that went to the very essence of the bargain. We do not say that the seller was under a duty to mention the projected streets at all. That question is not here. What we say is merely this, that having undertaken or professed to mention them, he could not fairly stop halfway, listing those that were unimportant and keeping silent as to the other. The enumeration of two streets, described as unopened but projected, was a tacit representation that the land to be conveyed was subject to no others, and certainly subject to no others materially affecting the value of the purchase. The result is the same whether the silence of the seller as to the presence of a bisecting street was innocent or deceitful. Misrepresentation, even though innocent, sustains the rescission of the contract * * *."

 We think the evidence and legal principles support only one conclusion, namely, that Nichoalds concealed from McGlothlin material facts which equity and good conscience required him to disclose fully and honestly. Nichoalds entered into and closed the transaction without revealing knowledge of certain facts while partially disclosing other facts. McGlothlin acted without full knowledge of all the facts, to his damage. This constitutes fraud under Colorado law. See Morrison v. Goodspeed, et al., 100 Colo. 470, 68 P.2d 458.

There is another reason for concluding that a judgment of rescission was correctly entered. Nichoalds discharged McGlothlin as ranch manager. Naturally, when McGlothlin departed from the ranch he expected the return of the purchase price which he paid for stock in the Compass Corporation. Nichoalds treated the contract as rescinded as he immediately transferred the ranch property out of Compass Corporation into the El Sol Corporation, another corporation controlled by Nichoalds. From the day McGlothlin was discharged as manager of the ranch, Nichoalds treated the property as his own. He is now precluded from denying that the contract was rescinded, and McGlothlin is entitled to the return of the money he paid to defendants.

There is substantial evidence to support the findings of the trial court.

Affirmed.