Lucian T. ZELL, II,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 84–1935.

United States Court of Appeals,
Tenth Circuit.

May 24, 1985.

---

Lucian T. Zell, II, pro se.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Carleton D. Powell, and Murray S. Horwitz, Attys., Tax Div., Dept. of Justice, Washington, D.C., on briefs, for respondent-appellee.

Before BARRETT, SETH and McKAY, Circuit Judges.

McKAY, Circuit Judge.

This three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

This is an appeal from a decision of the United States Tax Court upholding, for the most part, the Internal Revenue Service's determinations of deficiency and additions to tax for petitioner's tax years 1976, 1977, 1978, and 1979. Petitioner challenges both the deficiency assessment and the imposition of the civil fraud penalty under 26 U.S.C. § 6653(b).[1]

Petitioner retired from the United States Air Force in 1963 and has received a military pension since that time. In 1976, petitioner submitted an employee's withholding allowance certificate (Form W-4) to the Department of the Air Force certifying that he was entitled to thirteen withholding allowances. Consequently, only $110.87 was withheld as income tax from petitioner's pension during 1976, and no amounts were withheld during 1977, 1978, or 1979. During the four years, petitioner continued receiving his military pension.

In the years 1976 and 1977, petitioner filed Forms 1040 from which he omitted information as to his social security number, exemptions, income, adjustments to income, deductions, and other information necessary to a determination of his tax liability. In place of such information, petitioner inserted the word "none" or asterisks which referred the reader to various constitutional objections.

Petitioner did not file any federal income tax returns for 1978 and 1979. On or about January 6, 1981, petitioner, aware that he was being investigated for those tax years, wrote to the IRS claiming that his wages were not taxable income and that he was not required to file a tax return.

The IRS determined deficiencies in petitioner's income taxes for the years 1976, 1977, 1978, and 1979, and further assessed civil fraud penalties under 26 U.S.C. § 6653(b) and additions to tax for failure to pay estimated tax for each year in issue under 26 U.S.C. § 6654. Petitioner timely sought redetermination in the tax court. The tax court sustained the deficiencies and the additions to tax for the most part but allowed petitioner additional deductions for interest expenses and taxes. Petitioner appeals.

*The Deficiency Assessments*

A statutory notice of deficiency is presumed correct, and the petitioner has the burden of establishing that the respondent's determination of income and deductions are incorrect. *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Anson v. Commissioner,* 328 F.2d 703, 706 (10th Cir.1964). Petitioner challenges the deficiency assessments on two grounds. First, he claims that he is entitled to deduct various expenses as trade or business expenses under 26 U.S.C. § 162 (1982). Second, he claims that the tax court erred in disallowing capital loss carryovers.

The tax court affirmed the disallowance of the claimed trade or business expenses on the ground that petitioner had failed to prove that he was engaged in a trade or business during the years in question, that the activities in which he was engaged were accompanied by a profit motive, or that the payments for which deductions were claimed were not personal living expenses expressly made non-deductible by 26 U.S.C. § 262 (1984). In addition, the

---

1. Petitioner's failure to offer any evidence with regard to the additions to tax under 26 U.S.C. § 6654 warrants an affirmance of the tax court's conclusion in this regard.

court found that petitioner had failed to meet the substantiation requirements. *See* 26 U.S.C. § 274(d) (1984).

 The general test for whether a person is engaged in a "trade or business" under § 162 is whether the taxpayer's primary purpose and intention in engaging in the activity is to make a profit. *Snyder v. United States*, 674 F.2d 1359, 1362 (10th Cir.1982).[2] Testimony indicates that petitioner claimed trade or business deductions for expenses incurred in three activities during the tax years in question. First, petitioner claimed deduction for expenses incurred in 1976 and 1977 in connection with an organization called Taxpayers Anonymous, a group apparently designed to provide information about the tax protest movement. Second, he claimed deductions for the cost of attending a training program in Janesville, Wisconsin where he sought to learn "the trust business," and for expenses incurred in a subsequent "trust consulting" activity. Finally, petitioner was also involved in the distribution of a line of products known as Amzoil. Petitioner was uncertain as to when, during the four years, he participated in the Amzoil activity. Petitioner testified that he had a profit motive in engaging in these activities.

 As petitioner argues, many taxpayers are in the business of helping people minimize their taxes, including accountants and lawyers. However, the evidence in the record concerning whether petitioner had "a good faith expectation of making a profit," *Snyder*, 674 F.2d at 1364, from his tax protest activities is scant. In addition, petitioner has failed to substantiate that the claimed deductions were expenses incurred in pursuit of his alleged trade or business

activities, rather than non-deductible personal expenses. On the record before us, the case appears close. However, petitioner had the burden of proving that he is entitled to the deductions. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934). We cannot say, on this record, that the tax court erred in finding that petitioner had not met his burden of proof.

 With regard to the purported capital loss carryover, the tax court found that petitioner had not presented any evidence of how the loss was incurred or how much had been applied to his tax liability for prior years. The tax court noted that petitioner had presented a copy of a schedule and some early returns showing that he had claimed capital losses, but found that this failed to satisfy petitioner's burden of proof. Petitioner argues on appeal that the exhibits show the origin of the tax loss carryover and subsequent additions to short- and long-term capital losses from 1958 through 1975. The tax court correctly observed that petitioner's failure to show how the loss had been incurred and how much of that loss had been applied to prior tax liabilities precluded a finding in his favor. *See Davis v. Commissioner*, 674 F.2d 553 (6th Cir.1982).

### The Fraud Penalty

 Petitioner also challenges the assessment of a 50 percent penalty for civil fraud under 26 U.S.C. § 6653(b) (1984).[3] The government has the burden of proving fraud by clear and convincing evidence. 26 U.S.C. § 7454(a); 10 Mertens, *Law of Federal Income Taxation* § 55.10, p. 46 (1984). Fraud means "actual, intentional wrongdo-

---

**2.** In addition, even profit-motivated activity does not constitute a trade or business unless it has been "extensive activity over a substantial period of time during which the taxpayer holds himself out as selling goods or services." *Snyder*, 674 F.2d at 1364 (quoting *Stanton v. Commissioner*, 399 F.2d 326, 329 (5th Cir.1968)).

Section 212 of the Code allows a taxpayer to deduct expenses incurred for the production of income, even if the taxpayer is not engaged in a trade or business. To be deductible under this section, the expenses must meet all of the other requirements of § 162, including the requirement of a profit motivation. *Snyder*, 674 F.2d at 1364.

**3.** Section 6653(b) provides that "[i]f any part of any underpayment ... of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment."

ing, and the intent required is the specific purpose to evade a tax believed to be owing." *Mitchell v. Commissioner,* 118 F.2d 308, 310 (5th Cir.1941); *Pavlic v. Commissioner,* T.C. Memo 1984–182. Fraud will never be presumed or imputed. *Goldberg v. Commissioner,* 239 F.2d 316, 321 (5th Cir.1956). The required state of mind is one which, "if translated into action, is well calculated to cheat or deceive the government." 10 Mertens, *Law of Federal Income Taxation* § 55.10, p. 46 (1984).

Petitioner argues that he is not liable for the fraud penalty because he sought only to present a good-faith challenge to the internal revenue laws. Thus, he argues that this case is indistinguishable from *Raley v. Commissioner,* 676 F.2d 980 (3rd Cir.1982), in which the Third Circuit held that wilful defiance of the tax laws did not constitute fraud where the taxpayer went "out of his way to inform every person involved in the collecting process that he [was] not going to pay any federal income taxes." *Id.* at 983.

The question of whether disclosed wilful defiance of the tax laws constitutes civil tax fraud is one of first impression in this circuit. Clearly, wilful failure to file a timely return does not in itself, without more, establish liability for the fraud penalties. *Stoltzfus v. United States,* 398 F.2d 1002, 1005 (3rd Cir.1968), *cert. denied,* 393 U.S. 1020, 89 S.Ct. 627, 21 L.Ed.2d 565 (1969); *Cirillo v. Commissioner,* 314 F.2d 478, 482 (3rd Cir.1963); *Jones v. Commissioner,* 259 F.2d 300 (5th Cir.1958); *First Trust and Savings Bank v. United States,* 206 F.2d 97 (8th Cir.1953). Such an approach has been explained as follows:

> A man who files no return has made no misrepresentation. He has simply failed to do what the statute requires him to do. But the man who files a willfully false return has endeavored to mislead his government. He creates the appearance of having complied with the law, whereas his neighbor who has filed no return does no such thing.... There is

also good common-law analogy for such a distinction both in the tort rules regarding liability for deceit and in criminal law rules regarding liability for obtaining money under false pretenses. The law has always distinguished between failing to disclose useful information and making a disclosure which is a lie.

*United States v. Croessant,* 178 F.2d 96, 97 (3rd Cir.1949) (discussing difference between failure to file and attempt to evade payment of taxes in criminal cases). *See also Spies v. United States,* 317 U.S. 492 (1943). Since wilful failure to file is insufficient ground for imposition of a fraud penalty, surely nonfiling accompanied by notice of the nonfiling to the IRS, which clearly does not actively mislead the government into believing that the taxpayer has complied with the law, cannot, by itself, be sufficient to justify the fraud penalties.

*Raley* is not the only case in which a court has held that disclosed wilful defiance of the tax laws does not justify a fraud penalty under § 6653(b). In *Muste v. Commissioner,* 35 T.C. 913 (1961), the Tax Court found that, since the taxpayer had informed the IRS each year of his refusal to pay taxes because of religious convictions, the fraud penalty was not justified. The court felt that the fraud penalty would be justified only upon a showing of conduct likely to mislead or conceal. *Id.* (citing *Spies,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418). Since the petitioner had not attempted to conceal his income or his failure to pay taxes, the Tax Court found that fraud had not been committed. In *Druker v. Commissioner,* 697 F.2d 46 (2d Cir.1982), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2429, 77 L.Ed.2d 1316 (1983), the Second Circuit noted that there was "nothing furtive or fraudulent" in the conduct of the taxpayers, who had checked the box marked "married, filing separately," then calculated their taxes using the rates for single persons.[4] The taxpayers had attached a

---

**4.** This conclusion by the Second Circuit is dicta since the IRS did not attempt to collect a fraud penalty. However, it does demonstrate that dis-

letter to their tax return explaining that they were challenging the marriage penalty.

Further support for the view that disclosed defiance does not constitute fraud can be derived from the standard definitions of fraud. "[I]t must be accepted that Congress intended the ultimate conclusion of 'fraud' to be as ordinarily understood in the law." *Powell v. Granquist,* 252 F.2d 56, 61 (9th Cir.1958).[5] Fraud, in other areas of the law, requires an element of deception. One example is the definition offered in *United States v. Clevenger,* 733 F.2d 1356, 1358 (9th Cir.1984), a case involving mail and wire fraud:

> To establish fraud, the government must prove that the defendant possessed the requisite intent to defraud. The elements of fraud consist of: (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) and with intent to deceive, (5) with action taken in reliance upon the representation.

(citations omitted). *See also Venture Investment Co., Inc. v. Schaefer,* 478 F.2d 156, 158 (10th Cir.1973) (discussing Colorado common-law fraud); *Nichoalds v. McGlothlin,* 330 F.2d 454, 457 (10th Cir. 1964) (fraud "connotes perjury, falsification, concealment or misrepresentation"). In numerous cases, the courts have stated that fraud requires an intent to deceive. *See, e.g., Plantation Key Developers, Inc. v. Colonial Mortgage Co. of Indiana, Inc.,* 589 F.2d 164, 172 (5th Cir.1979); *United States v. Mead,* 426 F.2d 118, 122 (9th Cir.1970).

Clearly, where the taxpayer has informed the IRS of his refusal to file or to pay, and of the reasons for that refusal, the government has not been deceived. In addition, the disclosure clearly negates any intent to deceive. Thus, under traditional definitions of fraud, disclosed defiance of the tax laws is not fraudulent. Rather, it is intentional disregard of the rules and regulations—an offense for which Congress has expressly provided a penalty under § 6653(a). The five percent penalty has been imposed on those who failed to file because of objections to various provisions of the tax code or who filed protest returns. *See, e.g., Druker v. Commissioner,* 697 F.2d 46 (2d Cir.1982), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2429, 79 L.Ed.2d 1316 (1983) (figuring taxes as if single to protest marriage penalty); *Owens v. Commissioner,* T.C. Memo 1968–004 (refusal to file returns because of religious objection to participation in social security program). The interrelation of §§ 6653(a) and (b) makes clear that the civil fraud provision does not reach mere intentional disregard of the rules and regulations. Rather, there must be some element of concealment or deception to justify imposition of the 50 percent penalty instead of the milder 5 percent penalty.[6]

In summary, we agree with the Third Circuit's interpretation of § 6653(b) in *Raley.* The fraud provisions of the tax code require more than a disclosed wilful refusal to file or the filing of protest returns. Indeed, since mere wilful failure to file is not of itself enough to justify the

---

closed defiance does not fall within ordinary conceptions of fraud.

**5.** It should be noted that, in a number of cases, the Tax Court has explicitly referred to the dictionary definitions of fraud. *See, e.g., Muste v. Commissioner,* 35 T.C. 913 (1961); *Pavlic v. Commissioner,* T.C.Memo 1984–182.

**6.** In addition, there is a $500 penalty for frivolous returns specifically aimed at tax protesters. *See* 26 U.S.C. § 6702. The Senate Report states explicitly that "the Committee is concerned with the rapid growth of deliberate defiance of the tax laws by tax protesters.... The Committee believes that an immediately assessa-

ble penalty on the filing of protest returns will help deter the filing of such returns...." S.Rep. No. 494, 97th Cong., 2d Sess. 277, *reprinted in* 1982 U.S.Code Cong. & Ad.News, pp. 781, 1023–24. This penalty is the primary means currently in use to deter protest returns. *See, e.g., Baskin v. United States,* 738 F.2d 975 (8th Cir.1984); *Holker v. United States,* 737 F.2d 751 (8th Cir.1984); *Rowe v. United States,* 583 F.Supp. 1516 (D.Del.1984); *Ueckert v. United States,* 581 F.Supp. 1262 (D.N.D.1984); *Franklet v. United States,* 578 F.Supp. 1552 (N.D.Cal. 1984).

fraud penalty, wilful failure to file in conjunction with disclosure to the IRS of that failure to file clearly falls outside the fraud penalty, as does the filing of a protest return which makes clear that the taxpayer is not complying with the law.

The petitioner in this case, however, did not merely openly defy the tax laws. It is true that in 1976 and 1977 Zell informed the IRS that he was not paying his taxes by stating his constitutional objections on the Form 1040. However, he also falsified his W–4 withholding statements, making the affirmative misrepresentation that he was entitled to 13 exemptions. In 1978 and 1979, he neither filed nor disclosed to the IRS that he was not filing.[7] Thus he was not, as was the petitioner in *Raley*, openly in defiance of the IRS during all of the years involved in this dispute. The question, therefore, is whether the falsification of the W–4 forms is sufficient to demonstrate fraudulent intent.

There is an apparent split in the circuits concerning what the government must show, in addition to wilful failure to file or filing of a protest return, in order to prove the requisite fraudulent intent. In *Spies v. United States*, 317 U.S. 492, 498, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943), the Supreme Court enunciated the so-called "affirmative action test," requiring an independent act of misrepresentation or concealment, in distinguishing the misdemeanor of wilful failure to file from the felony of attempted tax evasion. The Court stated that it

would not without the clearest manifestation of Congressional intent assume that mere knowing and intentional default in payment of a tax, where there had been no willful failure to disclose the liability, is intended to constitute a criminal offense of any degree.

*Id.* at 498, 63 S.Ct. at 367. The Court continued, "willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony." *Id.* at 499, 63 S.Ct. at 368.[8]

The *Spies* test has been adopted by the Fifth and Eighth Circuits in civil tax fraud cases. *Jones v. Commissioner*, 259 F.2d 300 (5th Cir.1958); *First Trust and Savings Bank v. United States*, 206 F.2d 97 (8th Cir. 1953). In *Jones*, the Fifth Circuit found no fraud even though the petitioner was aware of his obligation to pay taxes, where he did not pay his taxes because he required the funds for other needs. Although the taxpayer did not disclose his failure to file, the court found that there was no evidence of concealment, misrepresentation, or subterfuge, but rather a mere wilful failure to file tax returns. The court noted that the taxpayer was fully cooperative when the tax commissioners began their investigation, a fact which it felt negated any inference of fraud. In *First Trust and Savings Bank*, the Eighth Circuit found no justification for the fraud penalty when the taxpayer failed to file because he was ignorant of his duty to pay taxes. The court noted that "[t]here was no proof of any wilful commission of any affirmative act of fraud on the part of the taxpayer to evade the taxes . . . ." 206 F.2d at 99.

The Third Circuit refused to follow the strict view of *Spies*, and instead adopted a test requiring only an "affirmative indication" of an intent to evade the tax. *Stoltzfus v. United States*, 398 F.2d 1002 (3rd Cir.1968), *cert. denied*, 393 U.S. 1020, 89 S.Ct. 627, 21 L.Ed.2d 565 (1969). The court found "convincing affirmative indication"

---

**7.** The taxpayer did write a letter to the IRS in 1981, after the IRS had started its investigation, explaining his refusal to pay taxes. From the perspective of the IRS, however, he neither filed nor actively protested in 1978 and 1979.

**8.** The Court noted that affirmative attempt may be inferred from conduct "such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or conceal." *Spies*, 317 U.S. at 499, 63 S.Ct. at 368.

in the government's showing "that the taxpayer had no contemporaneous reasonable basis for believing that taxes were not owed." [9] 398 F.2d at 1005. Under this approach, undisclosed wilful defiance such as petitioner engaged in in 1978 and 1979 would constitute tax fraud even had he not falsified his W–4 forms, since the taxpayer knew that the taxes were owed but simply refused to file a return and pay them.

The Court of Appeals for the Ninth Circuit specifically refused to consider whether the *Spies* test was a proper analogy to be applied to civil penalties. *Powell v. Granquist*, 252 F.2d 56, 61 (9th Cir.1958). In *Powell*, the Ninth Circuit found the taxpayer liable for fraud when he wilfully refused to file and did not inform the IRS of his failure to file, despite the fact that he made no contemporaneous, affirmative efforts to conceal the defalcation. The court stated that "it is difficult to see why open defiance of a known law, with no attempt being made to hide such defiance, should any more negative the existence of fraudulent intent than where defiance in fact is subsequently guised under a claim of ignorance." [10] However, in *Powell*, the petitioner also affirmatively concealed assets during the IRS investigation and refused to cooperate with the IRS agents. Since the court seems to have relied on these factors, it is not clear whether undisclosed wilful defiance is, alone, enough to justify fraud in the Ninth Circuit.

We find that the approach followed by the Fifth and Eighth Circuits is the most consistent with the intent of the statute. Thus, a taxpayer is not liable for the civil fraud penalties unless he commits some affirmative act of concealment or misrepresentation. Mere failure to file, whether disclosed or not, does not justify the fraud penalties even when the taxpayer knows taxes are due.

In the present case, petitioner did not merely fail to file. Beginning in 1976, he filed false W–4 forms, thus committing an "affirmative act" of misrepresentation sufficient to justify the fraud penalty. In two cases, the Tax Court has found that a taxpayer who failed to file because of various objections to the income tax laws, and, in addition, filed false W–4 forms, was guilty of fraud. In *Pavlic v. Commissioner*, T.C. Memo 1984–182, the court found that the petitioner's failure to comply with his known tax obligations and his attempts to conceal that fact by filing false W–4 forms justified a penalty of fraud, despite the fact that the court found him to have a sincere objection to the use of federal tax revenues to fund abortions. Similarly, in *Fuhrmann v. Commissioner*, T.C.Memo 1982–255, the Tax Court found that, where the petitioner filed a Form 1040 containing essentially no information and filed false W–4 forms to avoid withholding, the fraud penalty was justified.

In addition, petitioner in this case did not cooperate with the IRS agents during the investigation. To the extent that this factor has been considered in a number of cases in finding an intent to defraud, it counts against the taxpayer in this case. *See, e.g., Powell v. Granquist*, 252 F.2d 56, 61 (9th Cir.1958); *Jones v. Commissioner*, 259 F.2d 300, 303 (5th Cir.1958) (finding that taxpayer's cooperation with IRS agents helped to negate any inference of fraud). The lack of cooperation, combined with the failure to file and the false withholding statements, indicates an intent to deceive the government and to impede the collection of his taxes.

9. The court also found evidence of fraudulent intent in the taxpayer's admission that he had continued to fail to file, in part, because of fear of criminal prosecution for his earlier failure to file. Thus, his failure to file in later years was part of an attempt "to conceal his failure to file for the prior years." *Id.* at 1006.

10. *Powell* was decided under a predecessor to the current code. The court in *Powell* noted that, under the newly enacted code not yet in effect, the fraud provision and the wilful failure to file provision are "mutually exclusive." 252 F.2d at 62. Thus, it is not clear that the Ninth Circuit would find fraudulent intent under the present code from wilful, disclosed, failure to file in the absence of other indications of fraud.

The judgment of the tax court is affirmed.

BARRETT, Circuit Judge, concurring in the result.

I respectfully disagree with that portion of the majority opinion adopting the rationale of *Raley v. Commissioner*, 676 F.2d 980 (3rd Cir.1982), while attempting to distinguish *Raley* on the facts from the case at bar. *Raley*, just as the instant case, involved a taxpayer who (a) was engaged in the income tax protest movement, (b) did not file income tax returns for two years, (c) filed false income tax returns for two years, and (d) supplied false W–4 withholding forms. Thus the facts in *Raley* are really indistinguishable from those in this case.

The *Raley* court held that fraud, as used in 26 U.S.C. § 6653(b), means "intentional wrongdoing on the part of a taxpayer motivated by a specific purpose to evade a tax known or believed to be owing" but where a taxpayer goes "out of his way to inform every person involved in the collecting process that he [was] not going to pay any federal income taxes" the IRS has not established the fraud requirement. *Id.* at 983. I disagree with this latter reasoning. It defies the purpose of the code. One who goes out of his or her way to inform the world at large that he or she will not pay federal income taxes is surely evading a tax known to be owing.

This court, in *Ruidoso Racing Association, Inc. v. C.I.R.*, 476 F.2d 502 (10th Cir.1973), while finding affirmative acts of fraud involving willful understatement of income and active attempt to conceal the understatement through the use of false invoices and fictitious records nevertheless stated that fraud with intent to evade tax, if affirmatively established, supports the imposition of the § 6653(b) civil penalties. *Id.* at 506. This seems consistent with the definition of "fraud" identified in the context of § 6653(b) in *Conforte v. Commissioner*, 692 F.2d 587, 592 (9th Cir.1982), *i.e.*, "fraud," for the purposes of the statute, is demonstrated when it is shown that

the taxpayer acted "with the specific intent to avoid a tax known to be owing." Thus, I believe *Raley* misses the mark. It is my view that one who goes out of his or her way to proclaim that he or she shall not pay a federal income tax known to be owing is more involved in the fraud aspects of § 6653(b) that a taxpayer who intentionally under estimates the tax. Intentional failure to disclose *any* income from which a tax may be computed is far more serious than intentionally understating or concealing income. The intention in all such cases is to knowingly evade a tax owing.

In *United States v. Thompson*, 279 F.2d 165, 168–169 (10th Cir.1960), quoting *Helvering v. Mitchell*, 303 U.S. 391, 401, 58 S.Ct. 630, 634, 82 L.Ed. 917 (1938) we observed that given the policy underlying the civil fraud penalty provision of § 6653 that "[t]he purpose of the additional assessment of 50 percent of the amount of the tax deficiency is to reimburse the government for the heavy expense of investigation ad the loss resulting from the taxpayer's fraud."

In this case, petitioner, a retired Air Force colonel who regularly filed income tax returns from 1945 to 1975, affirmatively concealed his income for the years 1976 through 1979. In 1976 and 1977, he knowingly and intentionally omitted information from which his tax liability could be computed. In 1978 and 1979 he did not file income tax returns. Thus, petitioner undertook noncompliance with the voluntary self-assessment methods designed to evade the payment of taxes due. His actions frustrated the policies of the code. The purpose of the civil penalty for fraud is to discourage such noncompliance. See 10 Mertens, Law of Federal Income Taxation, §§ 55.09–55.18 (1976).

This court should decline to follow the *Raley* opinion. It constitutes an unwarranted departure from established law identifying "fraud" in the context of § 6653(b). In order to establish fraud under § 6653(b), it is not necessary to prove an evil motive or sinister purpose; rather, the facts need only establish an intention

on the part of the taxpayer to evade a tax which he or she knows to be owing.