In re The DOW COMPANY "SARA-BOND" PRODUCTS LIABILITY LITIGATION.

Blaine B. CHASE and C. Alan Hackstaff, Plaintiffs,

v.

DOW CHEMICAL COMPANY, Defendant.

No. MDL 711.
Civ. A. No. 86–K–680.

United States District Court,
D. Colorado.

May 8, 1987.

See also 650 F.Supp. 1387.

John B. Moorhead, James A. Clark, Darwin Poyfair, Catherine W. Hansen, Baker & Hostetler, Dean R. Vanatta, Scott F. Sullan, Vanatta & Sullan, Denver, Colo., A. Craig Fleishman, Haligman, Zall & Lottner, P.C., Englewood, Colo., Robert J. Tansey, Jr., William E. Dorigan, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for plaintiffs.

Walter A. Steele, Michael L. O'Donnell, Sandra L. Spencer, White & Steele, Denver, Colo., Joseph L. Falik, Eric H. Lipsitt, Detroit, Mich., Leonard L. Rivkin, James B. Rather, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., J. Roger Lochhead, The Dow Chemical Co., Midland, Mich., Dale R. Crider, Rivkin, Radler, Dunne & Bayh, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This memorandum opinion and order relates to Civil Action No. 86–K–680 *only.*

Dow has moved for summary judgment in Civil Action No. 86–K–680, *Blaine Chase, et al. v. Dow.* The motion is predicated on two independent grounds: (1) release, and (2) statute of limitations. For the reasons expressed below, I hold plaintiffs' second amended complaint in Civil Action No. 86–K–680 should be dismissed on the grounds of release. I therefore do not address the issue of the alleged time bar posed by the applicable statutes of limitations.

Plaintiffs' second amended complaint seeks recompense for damage to a building located at 270 St. Paul Street in Denver, Colorado. Plaintiffs, Blaine B. Chase and C. Alan Hackstaff,[1] are the owners and operators of this building. Second Amended Complaint, ¶ 1. The second amended complaint states claims under civil RICO, strict liability, breach of warranty and negligent misrepresentation, intentional misrepresentation (fraud), negligence, breach of continuing duty to warn, Colorado Consumer Protection Act, avoidance of the release, and punitive damages.

The tenth claim, for avoidance of the release, avers that "[o]n May 2, 1981, plaintiffs and defendant and two others entered into the release and indemnification agreement marked Exhibit A and attached to the complaint." Second Amended Complaint, ¶ 282. Plaintiffs seek a declaration that the release be adjudged void because Dow fraudulently induced plaintiffs "to enter into the release by making material misrepresentations of fact, including, in addition to the foregoing, the statement that Sarabond did not cause metals embedded in it to corrode and that such corrosion as existed did not cause cracks in the building's brick and masonry." *Id.,* ¶ 283. Alternatively, plaintiffs assert the release should be de-

---

1. The original complaint names Blaine B. Chase, C. Alan Hackstaff, and Robert Hackstaff as plaintiff-owners of the St. Paul Street building. The first amended complaint names only Blaine Chase and C. Alan Hackstaff. The second amended complaint names Blaine Chase, *et al.* I therefore assume Robert Hackstaff is no longer involved in this lawsuit.

clared void "by reason of failure of consideration or mutual mistake." *Id.,* ¶ 287.

In part, the release states:

In consideration of the sum of $30,000 paid to releasors [Blaine B. Chase, C. Alan Hackstaff, and Robert Hackstaff] by Dow-releasee, the receipt of which is hereby acknowledged, and other good and valuable consideration, releasors expressly and totally release, acquit and discharge Dow-releasee from any and all claims, demands, and causes of action releasors have now or might have now, ever had, or may have in the future, known or unknown, including, but not limited to claims, demands, and causes of action for personal injury, property damage or pecuniary loss arising from or in any way connected with the original construction and design of those portions of the above-described building [at 270 St. Paul Street in Denver] which contain a mortar additive manufactured by the Dow Chemical Company.

Also, releasors totally release, acquit, and discharge the Dow Chemical Company from any and all claims, demands, causes of action releasors have now or might have now, ever had, or may have in the future, known or unknown, including, but not limited to claims, demands, and causes of action for personal injury, property damage, or pecuniary loss arising from or in any way connected with any repair, replacement, design, services, materials or procedures utilized after the original construction to cure the alleged defects in the building.

The language of the release is broad and sweeping in scope. Giving that language its obvious meaning, *Equitable Life Assurance Society of the United States v. Meiers,* 629 F.Supp. 1193, 1194 (D.Colo.1986), the release, if binding, bars all the claims plaintiffs raise in this suit.

Plaintiffs, however, contend the release is not binding because they were fraudulently induced to execute it. Plaintiffs argue Dow fraudulently concealed material information during the negotiation process which led to the release. Plaintiffs' Memorandum in Response to Dow's Motion for Summary Judgment, at 18, 20. Plaintiffs declare "Dow intended plaintiffs to settle their claim based upon the mistaken belief that the cracking was due only to freeze-thaw of the water infiltrating the building and that elimination of that water through caulking and sealing would rectify the problem." *Id.* at 23. Had Dow disclosed its "Sarabond technical data to plaintiffs," *id.* at 20–21, "plaintiffs would not have settled with Dow in 1981." *Id.* at 3.

Plaintiffs cite the case of *Teodonno v. Bachman,* 158 Colo. 1, 404 P.2d 284 (1965) in support of their argument. They claim this case recites the elements of fraudulent concealment and that the facts of the instant controversy demonstrate satisfaction of each of those elements. Plaintiffs' Brief at 18. Under *Teodonno,* actionable concealment consists of:

(a) the concealment of a material existing fact which in equity and good conscience should be disclosed; (b) knowledge that one is concealing such a fact; (c) ignorance on the part of one from whom such fact is concealed of the existence of the fact concealed; (d) intention that the concealment be acted upon; and (e) resultant damage.

*Id.,* 404 P.2d at 285.

■ Plaintiffs' brief first discusses Dow's purported duty to disclose. Plaintiffs' Response at 18–22. None of the cases cited by plaintiffs, however, involve a release of legal claims. Rather, all the cases address the issue of the duty to disclose during the initial commercial transactions between the parties.[2] These cases

---

**2.** *See Nichoalds v. McGlothlin,* 330 F.2d 454 (10th Cir.1964) (action for rescission of contract to buy interest in a ranch); *Bair v. Public Service Employees Credit Union,* 709 P.2d 961 (Colo. App.1985) (action for defendant's failure to disclose terms of credit disability insurance policy); *Carlson v. Garrison,* 689 P.2d 735 (Colo. App.1984) (car buyer's action against dealership for nondisclosure relative to purchase of used car); *Schnell v. Gustafson,* 638 P.2d 850 (Colo. App.1981) (fraud in sale of home); *In re Cisneros,* 163 Colo. 245, 430 P.2d 86 (1967) (proceeding to set aside heirship determination); *Cohen v. Vivian,* 141 Colo. 443, 349 P.2d 366 (1960) (fraud in sale of houses).

are inappropriate authority for the case at bar. *See* Dow's Reply Brief at 4–5. Once the initial transactions have spawned a legal controversy, the relationship of the parties is incontrovertibly embossed with a new stamp.

The first imprimatur left by this new mark is, of course, the release itself. The release is the consensual embodiment of the status of the relationship between Dow and plaintiffs at the pre-litigation but post-transaction stage.[3] In the release, Dow specifically denied plaintiffs' allegations "pertaining to the cause of the alleged damages." Release, Exhibit A to Second Amended Complaint, at p. 1. In addition, the final paragraph of the third page of the release begins with these two sentences:

> Releasors and all releasees understand that this release and indemnification agreement is a compromise of a doubtful claim or claims and that payment by the releasees of the above-stated sums is not to be construed as an admission of liability on the part of any of the releasees. Releasees expressly deny liability therefor, and any negligence in this matter; releasees intend merely to avoid litigation with respect to said claims.

This language is strong evidence of the parties' understanding that Dow did not owe plaintiffs a duty to disclose the Sarabond information. Dow's disclosure of that information would have constituted an admission of causation, and hence liability, on Dow's part. The plain language of the release indicates the parties mutually agreed the release did *not* contemplate any such result. Thus, under the bare terms of the release, there was no duty to disclose.

The absence of any duty to disclose is confirmed by pertinent case law. For example, in *Ingram Corporation v. J. Ray McDermott & Co., Inc.*, 698 F.2d 1295 (5th Cir.1983) the court stated:

> Ingram further contends that McDermott's failure to disclose possible antitrust claims during the release negotiations is evidence of McDermott's fraudulent concealment of the antitrust conspiracy. This cannot be so. Parties bargaining at arms length who are not in a fiduciary relationship with one another are not required to make known all possible claims against one another.... McDermott's silence as to possible antitrust claims is not the same thing as fraudulent inducement.

*Id.* at 1315 (citation omitted).

These principles are controlling. No fiduciary relationship, nor any relationship of confidence or trust, has been alleged to exist between plaintiffs and Dow at the time the release was executed. To the contrary, the nature of the relationship at that time was fully adversarial. Both sides were represented by counsel. No duty ever arose. *See McMahon v. Meredith Corporation*, 595 F.2d 433, 439–40 (8th Cir.1979) (applying Missouri law). Plaintiffs, therefore, cannot satisfy the duty element of fraudulent concealment even under the standard of review prevalent on this motion for summary judgment.[4]

---

**3.** This embodiment is not negated by plaintiffs' claim of fraudulent inducement. Plaintiffs do not aver they did not understand the meaning of the content of the release or that they did not know what they were signing when they endorsed the release. Indeed, quite the opposite is true. Both sides were represented by counsel who engaged in a prolonged period of negotiation and correspondence before drafting and executing the release. *See, e.g.,* exhibits attached to Dow's Memorandum of Law in Support of Defendant's Motion for Summary Judgment. In short, plaintiffs' only contention is that the release is voidable because it was fraudulently induced. Plaintiffs do not argue the release is void ab initio due to fraud in the execution. *See Colorado Plasterers' Pension Fund v. Plasterers' Unlimited, Inc.,* 655 F.Supp. 1184, 1185–87 (D.Colo.1987). The difference between the two types of fraud permits me to extract specific language within the body of the release as evidence of the fraudulent inducement.

**4.** Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining the existence of any genuine issue of material fact, the record is construed in the light most favorable to the party opposing the motion. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir. 1980). However, the adverse party "may not rest upon the mere allegations or denials of his

Even putting the duty question aside, *arguendo*, plaintiffs also cannot meet the *Teodonno* element of ignorance.[5] The exhibits attached to Dow's supporting brief amply demonstrate plaintiffs' awareness and active pursuit of a claim that the damage to the St. Paul Street building was caused by Sarabond's alleged defective qualities. *See* Dow's Reply Brief at 5–6.

Plaintiffs also discuss the element of reliance. Plaintiffs' Response Brief, at 22–3. Strictly speaking, reliance is not an element of fraudulent concealment. It is an element of fraudulent misrepresentation. *Institute for Professional Development v. Regis College*, 536 F.Supp. 632, 633 (D.Colo.1982). Victims of fraudulent concealment, however, can be damaged by the fraud only when they act on the concealment. *Carlson v. Garrison*, 689 P.2d 735, 737 (Colo.App.1984). Action on the concealment is therefore the elemental corollary to reliance on a misrepresentation.[6]

Reliance must be reasonable. The party claiming fraud must have had a right to rely on the misrepresentation. *Regis College*, at 633. Cases which discuss reliance in the context of avoidance of a commercial release agree that unless the reliance was justified, the release could not have been fraudulently induced. *See, e.g., Pettinelli v. Danzig*, 722 F.2d 706, 710 (11th Cir. 1984); *Zelman v. Cook*, 616 F.Supp. 1121, 1133 (S.D.Fla.1985); *Mayer v. Development Corporation of America*, 541 F.Supp. 828, 848 (D.N.J.1981), *affirmed without opinion*, 688 F.2d 822 (3rd Cir. 1982).

In the instant situation, any reliance by plaintiffs was unjustified. Plaintiffs knew or should have known of the existence of their fraud claim at the time the release was executed. *See, e.g.*, Dow's Supporting Brief, Exhibit J, Exhibit N at ¶s 22–25. "When negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the allegedly dishonest parties." *Pettinelli*, at 710. Moreover, as noted above, the parties were involved in a pre-litigation, adversarial relationship which necessitated the engagement of counsel. Under these circumstances, plaintiffs had no right to rely on any misrepresentations, or to act on any concealments, concerning Sarabond's possible causal role in their building's damage.

Plaintiffs must meet each and every one of the elements of fraudulent concealment in order to sustain their claim of fraudulent inducement of execution of the release. Failure of any one element destroys the claim of fraudulent inducement. Plaintiffs, however, cannot meet at least three of those separate elements:[7] duty, ignorance, and justified action on the concealment. Therefore, the claim for avoidance of the release must fail. Since, as noted above, the release bars all of plaintiffs' claims, the second amended complaint must be dismissed.

Plaintiffs, however, pose an alternative argument of lack of consideration or mutual mistake.[8] Assuming "Dow was be-

---

pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

5. As Dow notes, Reply Brief at 3, plaintiffs' response omitted this element from its recitation of the *Teodonno* elements.

6. Indeed, reliance on a material omissive misrepresentation is tantamount to action on a concealment. The two torts are, therefore, twin sides of a single coin.

7. I make no comment on the merits of plaintiffs' case with regard to those elements of the tort of fraudulent concealment not specifically discussed in the text of this opinion.

8. Citing *Oman v. Mishler*, 92 Colo. 476, 22 P.2d 132 (1933), plaintiffs also contend "[t]he fact that both sides were mistaken is further evidenced by the woefully inadequate consideration paid by Dow to the plaintiffs in exchange for the release—$30,000 for a repair that will cost over $1 million." Response Brief at 27. This statement is not supported by *Oman*. There, the Colorado Supreme Court stated "gross inadequacy of consideration for a release may itself constitute evidence of *fraud*." *Id.*, 22 P.2d at 133 (emphasis added). *Accord Weber v. Head Camp*, 60 Colo. 529, 154 P. 728, 730 (1915) ("[a] grossly inadequate consideration for the release of valuable rights has been held in itself to be an evidence of fraud"). I have already determined the absence of fraud. *Oman* therefore has no effect on my decision under the

ing honest in the rendering of its opinion [of the cause of the masonry cracking], Dow, like plaintiffs, failed to appreciate the 'extent, severity and likely duration' of the injury to the building." Plaintiffs' Response at 26, quoting *Gleason v. Guzman*, 623 P.2d 378, 385 (Colo.1981). Plaintiffs also rely on *Jones v. Union Pacific Railroad Company*, 504 P.2d 370 (Colo.App. 1972) (not selected for official publication) in support of this argument.

Neither *Gleason* nor *Jones* is applicable.[9] Both of those cases involved the propriety of a release in a personal injury action in the face of a mistake about the extent or nature of plaintiffs' physical injury. The thrust of those opinions is that an injured lay plaintiff should not be penalized for his lack of medical knowledge. *See Gleason* at 385 (focussing "on what the [plaintiff's] guardian, as a layman, knew about the injury, and not what the opinion of a highly specialized physician may have been"). "Courts tend to be somewhat lenient ... toward victims of bodily injuries who seek to set aside releases on the grounds of mistake." Hunter, *Modern Law of Contracts*, ¶ 12.02[6] (1986). But "a layman who is the victim of an automobile accident may not be held to quite as strict a standard in the analysis of his release to an insurance company *as would a businessman engaged in common commercial transactions.*" *Id.* (emphasis added).

Neither party has directed my attention to law which involves "a businessman engaged in common commercial transactions." The Restatement (Second) of Contracts, however, is instructive. Section 152(1) states:

Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected par-

ty *unless he bears the risk of the mistake under the rule stated in § 154.* (emphasis added).

Section 154 of the Restatement provides: A party bears the risk of a mistake when
(a) the risk is allocated to him by agreement of the parties, or
(b) *he is aware, at the time the contract is made, that he had only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient,* or
(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.
(emphasis added).

These principles pose an impenetrable barrier for plaintiffs. There can be no doubt that, as releasors, plaintiffs bore a risk under the settlement agreement codified in the release. "[L]imited knowledge with respect to the facts to which the mistake relates" is inherent in the very nature of a release discharging legal claims which have not yet been tried or otherwise adjudicated. This conclusion is especially compelling in light of the express language of the release at issue here. That release specifically disclaims Sarabond's causal role or Dow's liability.

This point was succinctly expounded in the district court's opinion in *Ingram Corporation v. J. Ray McDermott & Co., Inc.*, 495 F.Supp. 1321 (E.D.La.1980):

Any party who enters into a general release, thereby releasing all claims, both known and unknown, takes a calculated risk, and it cannot rely on the other party to save it from the consequences of its act should it later find them more severe than anticipated. Indeed, were the law otherwise it would be virtually impossible for the courts ever to enforce a general release, a result which would greatly undermine the public policy which encourages compromise of differences.

---

doctrine of mutual mistake. *See also Fitzwater v. Lambert and Barr, Inc.,* 539 F.Supp. 282, 294 (W.D.Ark.1982) ("[i]n any event, inadequacy of consideration alone is not sufficient to vitiate a release").

**9.** Even if they were applicable, they do not support plaintiffs' claim of a mutual mistake of fact. Rather, there was nothing more here than a mutual mistake of opinion. *See Scotten v. Landers,* 190 Colo. 27, 543 P.2d 64, 66 (1975); *Davis v. Flatiron Materials Company,* 182 Colo. 65, 511 P.2d 28, 31 (1973).

*Id.* at 1328 (citation omitted).

In sum, no genuine fact exists on the issue of fraudulent inducement or mutual mistake regarding plaintiffs' execution of the release. There was no fraudulent inducement and no mutual mistake. Plaintiffs cannot now use either of these doctrines to extricate themselves from a contract which, with hindsight, appears to have been an improvident business arrangement.

Accordingly, IT IS ORDERED that:

1. Defendant's motion for summary judgment is granted, and plaintiffs' second amended complaint is dismissed;

2. Judgment shall enter for defendant on its counterclaim for breach of the release. Defendant shall have its costs and fees incurred in defending Civil Action 86–K–680, as provided by the terms of the release. Defendant may file a *concise* statement of costs and fees on or before June 5, 1987. Plaintiffs may file a *concise and specific* set of objections to any such statement on or before June 25, 1987. In drafting any statement or objection to any statement, before submission to the court, the parties shall refer to *Lucero v. City of Trinidad,* 815 F.2d 1384 (10th Cir.1987) and *Wright v. U-Let-Us-Sky Cap,* 648 F.Supp. 1216 (D.Colo.1986).