FLOYD DEAN BROBST, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent SYDNEY J. BROBST, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brobst v. Commissioner
Docket Nos. 3906-87; 5913-87.
United States Tax Court
T.C. Memo 1988-455; 1988 Tax Ct. Memo LEXIS 507; 56 T.C.M. (CCH) 279; T.C.M. (RIA) 88455; September 22, 1988. *507 Held: Statutory notices were issued before expiration of the 3-year limitation period. Held further, fraud addition sustained. Floyd Dean Brobst, pro se. David G. Hendricks, for the respondent. *508 WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies and additions to tax separately against petitioners Floyd D. Brobst and Sydney J. Brobst for the calendar years and in the amounts as follows: Addition to Tax
Section
Section
Year
Amount
6653(b) [1]
6654
Floyd D. Brobst
1977
$ 3,221
$ 1,610.50
$ 102.82
Sydney J. Brobst
1978
3,568
1,784.00
113.91
The separate petitions filed by each petitioner were consolidated for trial, briefing, and opinion. For convenience our Findings of Fact and Opinion are combined. Some of the facts have been stipulated and they are so found. During all of the year 1978, Floyd D. Brobst and Sydney J. Brobst were husband and wife, residing in the State of Texas. They were residents of Oklahoma when the petitions were filed. For 1978, these two petitioners together filed protester-type returns which contained their names, addresses, *509 and signatures with the words "object self-incrimination" on almost every line. Separate statutory notices were issued to each petitioner. Respondent treated one-half of the combined incomes of each as taxable to each person. The slight difference in the deficiencies results, we assume, from the allowance to Mr. Brobst of two exemptions. The issues for decision are the fraud addition and, as stated by the parties, whether or not the statute of limitations had run prior to the issuance of the statutory notices. This latter issue is more correctly described as whether the statutory notices are valid under the facts of this case. [2]
During 1978 Mr. Brobst was employed by Gulf Oil Corporation and Mrs. Brobst by a unit of the Pampa Independent School System. At least for the years 1975 and 1976 petitioners filed Federal income tax returns on Forms 1040, reporting their income and itemized deductions in an appropriate manner. In September 1973, Mrs. Brobst submitted an employee's withholding exemption certificate showing zero exemptions and allowances. Mr. Brobst in February 1971 similarly submitted *510 a W-4 claiming zero exemptions. However, both petitioners adopted tax protester positions in December 1976, with the submission of new W-4 forms claiming respectively 16 allowances and 32 allowances. Thereafter in June 1977 they submitted a Form 1040X for 1975 with lines 1 through 6 containing the words "object self-incrimination" and claiming refund of the tax paid for 1975. This was followed by the filing of the protester returns for 1977 and 1978. For the years 1979 through 1981 either similar returns were filed or no returns were filed. In February 1983 Mr. and Mrs. Brobst were each convicted of violation of section 7203 for willful failure to file income tax returns for the taxable years 1977 and 1978. As a condition of probation, petitioners were required to file income tax returns for all years then due. Accordingly, on December 12, 1983, petitioners filed joint Federal income tax returns for the taxable years 1977 and 1978. The 1978 return was received on December 15, 1983. Respondent in some unexplained fashion mislaid the 1978 Federal income tax return. Hence, the statutory notices issued to each of petitioners were based on respondent's then belief that no proper *511 tax return had been filed for the year 1978. [3] This return was located shortly before trial. A comparison of the income and deductions determined in the statutory notices with those contained on the corrected 1978 tax return show that the amounts of income are the same. The difference between the statutory notices and the tax return is that on the 1978 income tax return petitioners claimed certain deductions which were not allowed by the statutory notices. However, petitioners presented no evidence during the trial with respect thereto and are deemed to have waived any claim they may have had to reduced deficiencies. The tax return constitutes an admission as to receipt of the income thereon reported. Thus the existence and the amount of the deficiencies for 1978 have been established. At the trial, petitioners made a contention that the statute of limitations had run on the 1978 year based upon a stamp on the face of the return with the date "1-18-84" inserted. This date refers, however, to the date a step *512 in processing the return was taken. Even if by error an Internal Revenue Service Center employee had concluded that the statute of limitations had run on that date, respondent would not be bound by such error. See, e.g., Zimmerman v. Commissioner,71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979). With respect to the fraud addition, respondent has the burden of proof. Sec. 7454(a); Rule 142(b). The deficiencies being established by petitioners' admission, respondent's burden of establishing same deficiency has been satisfied. Respondent's fraud addition is based on (i) petitioner's failure to file Federal income tax returns for the years 1977 and 1978, (ii) the filing of false W-4's in December 1976 claiming respectively, 16 and 32 exemptions, and (iii) their conviction for failure to file under section 7203. The Brobsts testified that they increased their exemptions in 1976 because they had started running race horses and thought they might have a zero tax liability, or at least they had no idea what their expenses or earnings would be from race horses. In addition Mr. Brobst lost some money on a gold contract. *513 We note that, in spite of the filing of the W-4's in December 1976, the Brobsts' in February 1977 filed a joint Federal income tax return reporting for 1976 gross income of slightly more than $ 29,000 and a tax liability of about $ 4,500. Petitioners made no real effort to demonstrate that their new W-4's had any relation to their anticipated income tax liabilities and we deem the filing of these 1976 Form W-4's to be the initial step in their determination to file protester returns. Neither petitioner seriously claims that the protester-type returns filed for the years 1977 and 1978 should be treated as Federal income tax returns. See Valverde v. Commissioner,T.C. Memo. 1987-203. By the same token, the amended 1978 Federal income tax return signed by the Brobsts on December 12, 1983, and received by respondent on December 15, 1983, was properly filled out and is conceded to be a valid income tax return. The two statutory notices are dated December 12, 1986, and were, therefore, issued within the 3-year statute of limitations period. Petitioners contention is, however, that the statutory notices were not issued with respect to the return which they actually *514 filed in 1983, but were issued on the theory that no return had been filed. The statutory notices were apparently based on information used in petitioners' criminal trial or otherwise available to respondent. Petitioners contend that because a return had been filed prior to issuance of the statutory notices, those notices were required to be based on the return. Because they were not and no assessment was made on the 1978 return, the statute of limitations has run. Petitioners argue that a statutory notice can be based on other information only where no return has been filed. Petitioners' authority is section 6501. Respondent, on the other hand, contends that the statutory notices were proper in that they were issued in the light of the protester returns filed in 1979. Respondent argues, without citation of authority, that it is irrelevant whether the notice of deficiency is computed relative to a return or on the basis that no return had been filed. Petitioners' contention seems to fit more closely within the contentions made in Scar v. Commissioner,81 T.C. 855 (1983), revd. 814 F.2d 1363 (9th Cir. 1987), and Campbell v. Commissioner,90 T.C. 110 (1988); *515 that is that the notices are invalid. However, the statutory notices here were issued with respect to these two petitioners and were based essentially on their actual gross incomes and deductions. As we said in Campbell "no particular form is required for a valid notice of deficiency and respondent need not explain how the deficiencies were determined." Campbell v. Commissioner, supra at 115. The statutory notice in this case is valid and was issued within the 3-year period as we have noted. Thus, respondent's position is in essence correct that the unavailability of the 1978 tax return is immaterial. [4]
Respondent has the burden of proving by clear and convincing evidence *516 that an underpayment exists for the year 1978 and some portion of same was due to fraud. Sec. 7454(a); Rule 142(b). To meet this burden, respondent must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner,80 T.C. 1111 (1983). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Estate of Pittard v. Commissioner,69 T.C. 391 (1977). Fraud is not to be imputed or presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970); Otsuki v. Commissioner,53 T.C. 96 (1969). However, fraud may be proven by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Rowlee v. Commissioner, supra.The taxpayer's entire course of conduct may be examined to establish the requisite fraudulent *517 intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106 (1969). The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies v. United States,317 U.S. 492, 499 (1943). A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justified the inference of fraud. See Holland v. United States,348 U.S. 121, 137 (1954); Otsuki v. Commissioner, supra.However, the mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962). Fraud may not be found under "circumstances which at most create only suspicion." Davis v. Commissioner,184 F.2d 86, 87 (10th Cir. 1950); Katz v. Commissioner, 90 T.C.    (June 15, 1988). Other badges of fraud which may be taken into account include: the making of false and inconsistent statements to revenue agents, Grosshandler v. Commissioner,75 T.C. 1, 20 (1980); the filing of false documents, Stephenson v. Commissioner,79 T.C. 995, 1007 (1982), *518 affd. 748 F.2d 331 (6th Cir. 1984); understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealment of assets and failure to cooperate with tax authorities. Bradford v. Commissioner,796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. Respondent's primary reliance is on the case of Zell v. Commissioner,T.C. Memo. 1984-152, affd. 763 F.2d 1139 (10th Cir. 1985). Zell is similar to this case in that protestor returns were filed for 2 years and either no returns or protester returns for 3 later years. Also, in Zell as in this case false W-4 forms were filed in an effort to reduce, if not eliminate, the withholding of income tax from the wages of each of the petitioners. There is no evidence that petitioners' Fifth Amendment concerns were genuine. Thus there are two badges of fraud. While the failure to file by itself is not sufficient, the intent to evade is demonstrated by the filing of false W-4s in an effort to prevent the withholding system from working. The filing of the false W-4 forms is an affirmative act *519 which satisfies the 6653(b) requirements in the 10th Circuit, to which this case is appealable. See Zell v. Commissioner,763 F.2d 1139, 1146 (10th Cir. 1985). We conclude that the underpayment for 1978 is due to fraud on the part of both petitioners. Petitioners have submitted no facts or arguments as to why the addition to tax under section 6654 is not correct. The burden of proof is on them with respect to this addition. Therefore, we hold for respondent. Thus, we hold for respondent on all issues. Decisions will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. A companion case involving unrelated issues for 1983 is also filed this date. ↩
3. Apparently, the 1977 return was received. Whether a statutory notice was issued does not appear from this record. No petition was filed with respect to 1977. ↩
4. Respondent does not argue in this context that the provisions of section 6501(c)(1) or (c)(3) would apply to preclude the statute of limitations from running. Subsection (c)(3) becomes inapplicable when a valid return is filed, Badaracco v. Commissioner, Stevens, J. dissenting 464 U.S. 386, 401 (1984); Bennett v. Commissioner,30 T.C. 114↩ (1958). A protester return is not a false or fraudulent return within the intent of subsection (c)(1).