WILLIAM G. EGNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Egner v. Commissioner
Docket No. 18866-86.
United States Tax Court
T.C. Memo 1989-247; 1989 Tax Ct. Memo LEXIS 247; 57 T.C.M. (CCH) 484; T.C.M. (RIA) 89247; May 18, 1989. William G. Egner, pro se. William P. Boulet, Jr., for the respondent. SCOTT
MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax for the years and in the amounts as follows: Increase
Additions to Tax, Sections [1]
Year
in Tax
6653(b)
6653(b)(1)
6653(b)(2)
6654
6661
1981
$ 11,712.00
$ 5,856.00
-    -
$ 897.42
1982
$ 10,935.00
-    5,467.50 *
-0-   $ 1,093.50
*250 By amendment to answer, respondent alleged that, if petitioner was not liable for additions to tax under section 6653(b) for his 1981 and 1982 calendar years, he is liable for additions to tax under section 6653(a)(1), section 6653(a)(2) and section 6651(a)(1) for these years. The issues for decision are: (1) whether petitioner is entitled to deduct $ 796 more than allowed by respondent as commissions paid in 1981 in connection with his survival products business; (2) whether a portion of petitioner's underpayment of tax in each of the years 1981 and 1982 was due to fraud causing him to be liable for additions to tax under section 6653(b) for 1981 and section 6653(b)(1) and (2) for 1982; (3) whether, if petitioner's 1981 and 1982 underpayments were not due to fraud, petitioner is liable for additions to tax under section 6653(a)(1) and (2) for these years because his underpayment in each such year was due to negligence or intentional disregard of the rules and regulations; (4) whether, if petitioner's 1981 and 1982 underpayments were not due to fraud, he is liable for an addition to tax under section 6651(a)(1) for each year for failure to file a Federal income tax return for such *251 year; (5) whether petitioner is liable for an addition to tax under section 6654 for his 1981 calendar year because he failed to make estimated tax payments for that year; and (6) whether petitioner is liable for an addition to tax under section 6661 for his 1982 calendar year because he substantially understated his income tax for such year. We have listed only the above issues because, from the stipulation filed at trial, we consider all issues other than those listed above, to be disposed of by agreement of the parties. On brief, however, petitioner continues to argue that he owes no tax because he has not voluntarily assessed himself nor has respondent made a proper assessment against him and that wages do not constitute taxable income. These contentions have been decided contrary to petitioner's position in so many cases that we are not addressing them in this case. In our view, the parties' stipulation disposes of all issues other than those set forth above. FINDINGS OF FACT Petitioner, William G. Egner (petitioner or Mr. Egner), resided in the State of Colorado at the time his petition in this case was filed. Petitioner was not married during the years here at issue *252 and had no dependents during these years. Petitioner was not over the age of 65 and was not blind during the years at issue. During 1981 and 1982, petitioner was employed by Northwest Transport Service, Inc. (Northwest) as a truck driver. During these years, petitioner also operated newspaper vending machines and marketed a line of survival products known as "Protect Yourself" at county fairs and trade shows. Petitioner filed Federal income tax returns for the years 1979 and 1980 with the Internal Revenue Service Center in Ogden, Utah. Both returns were prepared for petitioner by a certified public accountant and contained petitioner's social security number. Petitioner reported total wages in 1979 of $ 35,050 and his 1979 return disclosed a total income tax liability (after reduction for certain claimed credits against tax) of $ 3,785.62. His employer, Northwest, withheld $ 4,970 from his wages pursuant to section 3402. It was subsequently determined that there was a deficiency in petitioner's 1979 income tax of $ 1,819.38. [2] Petitioner reported total wages in 1980 of $ 43,166 and his 1980 return disclosed a total tax liability (after reduction for certain claimed credits *253 against tax) of zero. His employer, Northwest, withheld $ 1,167 from his wages in 1980 pursuant to section 3402. It was subsequently determined that there was a deficiency in petitioner's 1980 tax liability of $ 2,785. [3]
On January 1, 1981, petitioner submitted a Form W-4 for 1981 to his employer, Northwest, on which he claimed entitlement to 99 withholding allowances. His claim to 99 allowances was made solely to eliminate any withholding of income tax from his paychecks. Petitioner did not supply his social security number on the Form W-4 he submitted on January 1, 1981. Instead, the phrase, "RELIGIOUS OBJC," appears in the space provided for petitioner's social security number. No Federal income taxes were withheld from the compensation Mr. Egner received from Northwest in 1981. Mr. Egner made no estimated tax payments during 1981. In a letter dated December 16, 1981, respondent requested that petitioner supply respondent with information sufficient to establish petitioner's entitlement to claim 99 withholding allowances on his Form *254 W-4. On December 26, 1981, petitioner filed a Form W-4 on which he claimed exemption from withholding. In a letter dated December 26, 1981, petitioner informed respondent that the Form W-4 on which he claimed 99 withholding allowances was no longer in effect and that he had filed a new Form W-4 with Northwest on which he claimed exemption from withholding pursuant to section 3402(n). By letter dated February 2, 1982, respondent informed petitioner's employer, Northwest, that it should disregard any Form W-4 filed by petitioner in 1981 and should withhold Federal income tax from petitioner's wages on the basis of single status with one withholding allowance. However, the letter also informed Northwest that it must honor any Form W-4 filed by petitioner for 1982 until instructed otherwise by respondent. Respondent also notified petitioner, by letter dated February 2, 1982, that his employer, Northwest, had been instructed to disregard the Form W-4 he submitted. On February 17, 1982, petitioner filed a Form W-4 for 1982 on which he claimed exemption from withholding. By letter dated March 10, 1982, respondent informed petitioner's employer, Northwest, that it should disregard the *255 Form W-4 filed by petitioner on February 17, 1982, and that it should withhold Federal income tax from petitioner's wages on the basis of single status with one withholding allowance. Northwest withheld $ 8,847.81 from petitioner's wages in 1982. By letter dated May 10, 1982, respondent requested that petitioner supply respondent with information sufficient to establish petitioner's entitlement to exemption from withholding. By letter dated May 21, 1982, petitioner asked respondent how he could appeal respondent's denial of his exemption from withholding. By letter dated June 22, 1982, respondent informed petitioner that appeals procedures do not apply to corrections of Forms W-4. In several letters, dated August 31, 1982, addressed to various employees of the Internal Revenue Service, petitioner made, in one form or another, the same basic requests: Would you please send me complete instructions and forms with which I may begin the refund process to gain the return of the deducted portion of my wages so that I may use this money in the pursuit and building of my business by spending it on lawful deductions before the IRS, by denying me the right to spend my lawfully earned money, *256 "creates" a tax liability where none would have existed had I been able to spend my own money my own way? I would also like to know what you call the deducted portion of my wages. Is it a tax, a garnishment, an attachment, a distraint or a penalty? In letters dated February 15, 1982, February 24, 1982, and March 12, 1982, petitioner, an attorney, and the Golden Mean Society (an organization formed to assist its members concerning "Constitutionally lawful taxation"), respectively, warned petitioner's employer, Northwest, that it should disregard the instructions it had received from respondent regarding petitioner's withholding situation and asked Northwest to be uncooperative with respondent in the future. On August 9, 1982, petitioner filed an action in the County Court in and for the County of Adams, State of Colorado, against Mr. Steven Wilson, Northwest's controller. In his complaint, petitioner sought recovery of amounts withheld from petitioner's salary by Northwest in accordance with the instructions it had received from respondent. Mr. Wilson moved for a judgment on the pleadings on several grounds, including that an indispensable party, respondent, could not be joined *257 in the action. The court granted the motion finding that petitioner's suit was frivolous and groundless. The court also awarded attorney's fees and court costs to Mr. Wilson. Petitioner appealed this judgment; however, his appeal was dismissed. A petition for writ of certiorari to review this dismissal of the appeal was denied by the Supreme Court, State of Colorado. On June 14, 1982, respondent assessed a $ 500 penalty against petitioner pursuant to section 6682, with respect to the Form W-4 filed by petitioner on January 1, 1981, and issued to petitioner a letter of notice and demand for the assessed amount. By letter dated June 29, 1982, petitioner denied his liability for the $ 500 penalty and requested information on his rights to appeal the imposition of the penalty prior to collection. By letter dated July 15, 1982, respondent informed petitioner that penalties imposed pursuant to section 6682 are not subject to deficiency procedures and petitioner's only recourse was to pay the penalty and file a claim for refund with respondent and, if such claim was denied, to file a refund suit in United States District Court. On August 9, 1982, petitioner filed a complaint in the *258 United States District Court for the District of Colorado seeking to enjoin collection of the $ 500 penalty. The complaint was dismissed with prejudice on October 12, 1982. Petitioner filed a Form 1040 for 1981 on April 22, 1982, with the Internal Revenue Service Center in Ogden, Utah. The Form 1040 disclosed petitioner's name and address and the fact that petitioner was single. All other questions on the Form 1040 were left blank or were answered "NONE" or "OBJECT SELF INCRIMINATION." In a letter dated September 7, 1982, respondent notified petitioner that his Form 1040 filed for 1981 was not a proper return, explained to petitioner the penalties for failure to file a return, and invited him to submit a proper return for 1981. In a letter dated September 21, 1982, petitioner asked respondent several questions relating to his Fifth Amendment privilege against self-incrimination. He informed respondent that he would be willing to pay any valid constitutional tax and offered to file a valid return if respondent could show him how to do so without waiving his constitutional rights. Petitioner did not file a Form 1040 for 1982. For purposes of this case, the parties have stipulated *259 that petitioner did not file valid income tax returns for his 1981 and 1982 tax years. In September 1983, petitioner sent several letters to various Internal Revenue Service employees in which he discussed the meaning of the term "employee," as defined in section 3401(c), and questioned whether the definition was applicable to him. By letter dated October 31, 1983, respondent explained to petitioner that he was included in the definition of "employee" under section 3401(c) and was, therefore, subject to withholding under section 3402. In response to respondent's letter of October 31, 1983, petitioner, in a letter dated December 5, 1983, informed respondent that he was a "freeman", rather than a taxpayer, and, as such, was not subject to the provisions of the Internal Revenue Code. In addition, petitioner claimed that, while respondent was attempting to collect income tax, the Internal Revenue Code authorizes the collection of excise taxes only. Finally, petitioner claimed that he took advantage of no privilege which would subject him to the Internal Revenue Code, which he described as a "private law code." Copies of this December 5, 1983, letter were sent to judges, congressmen, *260 "patriots," and several of respondent's employees. Also on December 5, 1983, petitioner sent a letter and affidavit to the president of Northwest. In the letter, petitioner instructed Northwest to cease withholding Federal income tax from his wages and to disregard any contrary instructions from respondent. Petitioner claimed that the withholding was in violation of the contract between Northwest and himself, as negotiated by the Teamster's Union. Petitioner also claimed that only a court order could override his request that income tax not be withheld. By letter dated December 23, 1983, petitioner informed respondent of his instructions to Northwest and of his conclusion that he was not subject to the provisions of the Internal Revenue Code. Petitioner based this conclusion on his claim that his wages were not income within the meaning of the Sixteenth Amendment. Petitioner enclosed a memorandum in support of his conclusions. Copies of this letter were sent to Justices of the Supreme Court, the Attorney General of the United States, and several of respondent's employees. By letter dated December 30, 1983, respondent informed petitioner of the Internal Revenue Service's *261 willingness to help honest taxpayers solve legitimate problems but that the Internal Revenue Service did not have sufficient resources to address the problems of those taxpayers who were not engaged in an honest search for answers. Respondent, enclosed an Internal Revenue Service Fact Sheet which attempted to answer many of the questions raised by petitioner's letters. Over the next several months, petitioner sent letters to various judicial, congressional, and executive personnel in which he voiced his objections to the imposition of an income tax on his wages, questioned the meaning of the term "dollar," and questioned the meaning of the phrase "money of account." He also sent letters in which he accused respondent of unlawfully withholding amounts from his compensation. At one juncture, he sent a letter to the Department of Treasury in which he asked the cost to the United States of minting Susan B. Anthony dollars. By letter dated November 4, 1983, respondent's agent, Ms. Sally Longan, informed petitioner that his returns for 1981 and 1982 had been assigned to her for examination and that she would like to meet with him at 8:00 A.M. on December 29, 1983, if convenient. Petitioner *262 could not attend the meeting scheduled for December 29, 1983, and the meeting was, therefore, rescheduled for January 19, 1984, at 8:00 A.M. Petitioner failed to meet with or contact Ms. Longan on January 19, 1984. Instead, on January 19, 1984, the day of the scheduled appointment, petitioner sent Ms. Longan an affidavit and accompanying memorandum in which he claimed that he was not subject to the provisions of the Internal Revenue Code. By letter dated January 19, 1984, respondent informed petitioner that, since he had missed the appointment scheduled for that day, another appointment had been scheduled for February 2, 1984, at 1:00 P.M. Petitioner failed to appear for this meeting also. In a "30 day letter" dated May 23, 1984, respondent, through his agent Mr. W. W. Russell, proposed certain adjustments to petitioner's 1981 and 1982 income and also proposed the imposition of additions to tax under section 6653(b) for civil fraud. By letter dated June 9, 1984, petitioner requested that Mr. Russell supply him with copies of his W-2 forms issued by Northwest and inform him of the facts on which respondent based the imposition of additions to tax. On July 5, 1984, petitioner *263 sent another letter to Mr. Russell in which he claimed that compensation for his labor was not taxable income. Petitioner also claimed that, if Mr. Russell caused a deficiency notice to be issued, his actions would violate section 7214. [4] According to petitioner, this would cause Mr. Russell to lose his job and would subject him to fines and imprisonment. Finally, petitioner suggested that Mr. Russell meet him at a Holiday Inn to discuss his income taxes. Petitioner informed Mr. Russell that the meeting would be videotaped and that witnesses would be present. Petitioner reiterated this request for a meeting at a Holiday Inn in a letter dated July 9, 1984. [5]
*264 The notice of deficiency in this case was issued on March 13, 1986. In his notice of deficiency, respondent determined deficiencies in petitioner's 1981 and 1982 income tax liabilities of $ 11,712 and $ 10,935, respectively. Respondent also determined that petitioner was liable for additions to tax under section 6653(b), section 6654, and section 6661. The petition for redetermination of the deficiencies was filed on June 10, 1986. Petitioner did not keep adequate books and records for the years at issue. Representatives of respondent were allowed to view whatever records petitioner did keep for the first time at stipulation conferences held just prior to trial. As a result, the parties stipulated that they had reached agreement on most issues except the additions to tax determined by respondent and petitioner's entitlement to a business deduction for commissions in excess of those allowed by respondent. At the conclusion of the testimony at the trial of this case, respondent sought, and was granted, leave to amend his answer to conform the pleadings to the proof. In his amended answer, respondent alleged that, if petitioner was not liable for an addition under section *265 6653(b) for civil fraud, petitioner was liable for additions to tax under section 6653(a) for negligence or intentional disregard of the rules and regulations and for additions to tax under section 6651(a)(1) for failure to file a timely and valid income tax return for 1981 and 1982. OPINION The first issue for decision is whether petitioner is entitled to deduct, as an ordinary and necessary business expense, amounts allegedly paid out as commissions in connection with his survival products business in 1981 in excess of the amounts agreed to by respondent. Petitioner has the burden of proving his entitlement to such deductions. Welch v. Helvering,290 U.S. 111 (1933); Zell v. Commissioner,763 F.2d 1139 (10th Cir. 1985), affg. a Memorandum Opinion of this Court. Rule 142(a). According to petitioner, he paid out $ 796 in connection with his survival products business, as compensation to two individuals for services performed in 1981. Petitioner claimed that he paid Mr. Alan Asay $ 750 in cash to distribute brochures and samples at two county fairs *266 and a home and energy show. Petitioner did not obtain a receipt from Mr. Asay. The only evidence offered by petitioner in support of his claim is a notation, in petitioner's own handwriting, on the back of a piece of adding machine tape which reads as follows: PAID CASH TO
ALAN ASAY FOR SHOW ASSISTANCE
ADAMS CO. FAIR
250.00
APRIL 5 - 9
BOULDER CO. FAIR
300.00
APRIL 1 - 5
HOME & ENERGY SHOW
200.00
SEPT. 17 - 20
Although petitioner allegedly completed this notation contemporaneously (within 1981) with his payment to Mr. Asay, there is nothing on the notation to indicate what year these amounts were paid to Mr. Asay. Furthermore, petitioner admitted at trial that, contrary to the dates on the notation, the Adams County Fair actually took place prior to the Boulder County Fair. Petitioner also admitted at trial that both the Adams County Fair and the Boulder County Fair actually were held in August, not April as the notation indicates. Because of the inconsistencies between petitioner's testimony and the written note which he produced, we conclude that petitioner has not met his burden of proving that he actually paid $ 750 to Mr. Asay in 1981 *267 in connection with his survival products business and that he is not entitled to a deduction for this amount. Petitioner also claims that he paid approximately $ 46 to Ms. Orpha Shamoon as a commission payment for sales work she performed on his behalf in connection with his survival products business. Petitioner testified that he and Ms. Shamoon were out of town and Ms. Shamoon was in need of a pair of jeans. Petitioner felt that it would be difficult to cash a two-party check. Therefore, he wrote a check directly to a department store for the jeans Ms. Shamoon wanted. Although petitioner offered this canceled check as evidence of payment to the department store, the check contains no notations indicating its underlying purpose. Petitioner has offered no direct evidence, such as a receipt from Ms. Shamoon or an entry in a book of account, to corroborate his testimony as to the purpose of the check. We do not accept petitioner's testimony as to the purpose of the check and conclude that petitioner has failed to establish that the $ 46 check written to the department store represented a deductible business expense. The next issue for decision is whether petitioner is liable *268 for additions to tax under section 6653(b) for the year 1981 and under section 6653(b)(1) and (2) for the year 1982 because his underpayment of tax was due to fraud. [6]
*269 The existence of fraud under section 6653(b) and section 6653(b)(1) and (2) is a question of fact to be determined from the entire record. Recklitis v. Commissioner,91 T.C. 874, 909 (1988); Meier v. Commissioner,91 T.C. 273, 297 (1988); Kotmair v. Commissioner,86 T.C. 1253, 1259 (1986). Respondent has the burden of proving, by clear and convincing evidence, that a taxpayer's underpayment of his tax liability is due to fraud. Section 7454(a); Castillo v. Commissioner,84 T.C. 405, 408 (1985); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Kotmair v. Commissioner, supra at 1259; Castillo v. Commissioner, supra at 408; Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). Fraud will never be presumed. "Fraud means 'actual, intentional wrongdoing, and the intent required is the specific purpose to evade *270 a tax believed to be owing.' [Citations omitted.]" Zell v. Commissioner,763 F.2d 1139, 1142-1143 (10th Cir. 1985), affg. a Memorandum Opinion of this Court. However, since direct proof of a taxpayer's intent is rarely available, fraud may be proven by circumstantial evidence and the reasonable inferences that can be drawn from such circumstantial evidence. Zell v. Commissioner, supra;Meier v. Commissioner, supra.The taxpayer's entire course of conduct may be examined to establish the requisite fraudulent intent. Recklitis v. Commissioner, supra at 910. Although petitioner does not cite or specifically rely on Raley v. Commissioner,676 F.2d 980 (3d Cir. 1982), revg. a Memorandum Opinion of this Court, there are arguments in his brief and reply brief that indicate a reliance on that case. In the Raley case, the taxpayer failed to file valid returns for the years 1972 through 1976. In 1976, the taxpayer purported to file amended returns for 1972 and 1973, but the forms so filed contained only constitutional objections. In 1973 and the years thereafter, the taxpayer filed Forms W-4E *271 with his employer on which he claimed to be exempt from withholding. The taxpayer also refused to provide respondent with any information from which his tax liability could be determined. The taxpayer did send numerous letters to various officials in which he notified them that he was not going to pay any taxes. The Third Circuit held that under these circumstances, the taxpayer was not subject to the addition to tax for fraud under section 6653(b) because he "went out of his way to inform every person involved in the collection process that he was not going to pay any federal income taxes." Raley v. Commissioner, supra at 983. According to the court, the taxpayer's open defiance negated any claim of fraud. Petitioner, in the instant case, has stated at several places in his brief and reply brief that "Petitioner has never claimed to any person, at any time, that he was not going to pay taxes due." However, in each instance, petitioner follows this statement with a claim that he is not liable for taxes for various reasons, including that he has not made "a voluntary self-assessment of taxes" for 1981 and 1982 and that respondent has not made a "procedurally proper *272 assessment" of taxes against him for those years. The facts of the instant case closely resemble those present in Zell v. Commissioner, supra. Petitioner does, in a number of places in his brief, discuss the Zell case, but claims that his case is distinguishable. In spite of petitioner's attempted distinction between the Zell case and the facts in the instant case, we see no substantive distinction. In 1976, the taxpayer in Zell v. Commissioner, supra submitted a Form W-4 to his employer on which he claimed entitlement to 13 withholding allowances. In the years 1976 and 1977, the taxpayer submitted returns which contained only constitutional objections. The taxpayer did not file any returns for 1978 or 1979. In 1981, after the taxpayer became aware that respondent was investigating his tax liability, he wrote to respondent claiming that his wages were not taxable and that he was not required to file income tax returns. The taxpayer did not cooperate with respondent's agents during the investigation. In reaching its decision, the Tenth Circuit reiterated the oft-quoted rule that *273 willful failure to file a timely return does not, in and of itself and without more, establish liability for the fraud additions. Zell v. Commissioner, supra at 1143. The court then stated: The fraud provisions of the tax code require more than a disclosed wilful refusal to file or the filing of protest returns. Indeed, since mere wilful failure to file is not of itself enough to justify the fraud penalty, wilful failure to file in conjunction with disclosure to the IRS of that failure to file clearly falls outside the fraud penalty, as does the filing of a protest return which makes clear that the taxpayer is not complying with the law. Zell v. Commissioner, supra at 1144-1145. Nevertheless, the Tenth Circuit in Zell v. Commissioner, supra, upheld the imposition of an addition to tax under section 6653(b). The court reasoned that, because the taxpayer (in addition to intentionally failing to file income tax returns) falsified his W-4 withholding statements and, for some years, neither filed returns nor disclosed to respondent his failure to file, he had committed acts of misrepresentation which justified the imposition *274 of the section 6653(b) addition to tax. The court stated that "The lack of cooperation, combined with the failure to file and the false withholding statements, indicates an intent to deceive the government and to impede the collection of [the taxpayer's] taxes." Zell v. Commissioner, supra at 1146. The Tenth Circuit, in reaching its decision, distinguished Raley v. Commissioner, supra.
Other courts have also distinguished or refused to follow the reasoning of Raley v. Commissioner, supra.In Granado v. Commissioner,792 F.2d 91 (7th Cir. 1986) affg. a Memorandum Opinion of this Court, cert. denied 480 U.S. 920 (1987), the Seventh Circuit was presented with a case which was factually similar to Raley v. Commissioner, supra. The court expressly declined to adopt the Third Circuit's reasoning in Raley v. Commissioner, supra, and while following the Tenth Circuit's holding in Zell v. Commissioner, supra, did not adopt its analysis insofar as it accepted the reasoning of Raley.The Seventh Circuit stated that, "We hold that a taxpayer cannot *275 avoid the fraud penalties by notifying the Commissioner that he has been evading taxes and that he will continue to do so." Granado v. Commissioner, supra at 94. The Seventh Circuit upheld the imposition of the addition to tax under section 6653(b). The Ninth Circuit reached a similar conclusion in Edelson v. Commissioner,829 F.2d 828 (9th Cir. 1987), affg. a Memorandum Opinion of this Court, stating that, "Whether or not [the taxpayer] disclosed his willful refusal to file is therefore irrelevant to the tax court's finding of fraud and this finding is not clearly erroneous." Edelson v. Commissioner, supra at 833. An appeal in this case would be to the Tenth Circuit which decided Zell v. Commissioner, supra.Under the holding in Zell, mere failure to file a return, even though willful and open, is not sufficient to establish fraud. There must also be some independent indicia of fraud (i.e., concealment or misrepresentation) present to justify the imposition of the addition under section 6653(b). Zell v. Commissioner, supra at 1146; Kotmair v. Commissioner,86 T.C. 1253, 1260-1261 (1986). *276 In Kotmair v. Commissioner, supra at 1260, we stated that: This Court and other courts have not been hesitant to impose the addition to tax for fraud, where there has been an intentional failure or refusal to file a return, but in each case, there was also present some other independent evidence of fraudulent intent, such as by concealing information from the examining agents, filing false W-4 Forms, and the like, apart from the single fact of nonfiling, itself * * *. [Footnote ref. and citations omitted.] Kotmair v. Commissioner, supra at 1260. In the instant case, petitioner failed to file valid income tax returns for 1981 and 1982 and it is clear that such failure was willful. Despite petitioner's contentions to the contrary, we conclude from the evidence that he was aware of his obligation to file. He did so in both 1979 and 1980. His testimony at trial and his arguments on brief showed that he understood his obligation to file. Petitioner disclosed his willful defiance by filing a Form 1040 which contained nothing but his name, filing status, and constitutional objections. Nevertheless, under the holding in Zell v. Commissioner, supra, *277 willful failure to file standing alone is not sufficient to sustain a finding of fraud. However, this record shows many indicia of fraud other than petitioner's wilful failure to file returns. In 1981, petitioner submitted to his employer a Form W-4 on which he claimed 99 withholding allowances even though he was clearly not entitled to all of such allowances. Petitioner candidly admits that he claimed this excessive number of allowances to stop the withholding of Federal income tax from his wages. When respondent questioned his entitlement to the allowances, petitioner did not attempt to justify his claim. Instead, petitioner filed a Form W-4 claiming exemption from withholding under section 3402(n). Section 3402(n) provides that an employer need not withhold Federal income tax from his employee's wages if such employer receives from the employee a withholding exemption certificate certifying that the employee incurred no income tax liability for the preceding tax year and anticipates no tax liability for the current tax year. Clearly petitioner was not entitled to such exempt status. *278 However, even if he had been, his belated attempt to correct the fraudulent Form W-4 came too late in 1981 to make any appreciable difference. Thus, for 1981, petitioner submitted an admittedly fraudulent withholding statement and no amounts were withheld from his salary. Even though petitioner knew that no amounts had been withheld from his salary, he failed to make estimated tax payments for 1981. This also is an indication of fraud. Bradford v. Commissioner,796 F.2d 303, 308 (9th Cir. 1986), affg. a Memorandum Opinion of this Court; Recklitis v. Commissioner,91 T.C. 874, 911 (1988). In 1982, petitioner submitted a Form W-4 on which he certified that he was exempt from withholding because he had no income tax liability for 1981 and expected none for 1982. He did so even though he did not file a valid income tax return for 1981 and made no attempt to determine whether he did, indeed, have any income tax liability for such year. Thus, in 1982, petitioner submitted withholding statements on which he claimed exemption, even though he knew, or should have known, such statements had no basis in fact or law. Recklitis v. Commissioner, supra at 912. *279 Under the holding in Zell v. Commissioner,763 F.2d 1139 (10th Cir. 1985), the submission of such false withholding statements is an indicia of fraud. The court in Zell v. Commissioner, supra at 1146, also indicated that a taxpayer's failure to cooperate with respondent could be an indication of fraud. In the instant case, petitioner clearly failed to cooperate with respondent and used every means at his disposal to frustrate respondent's attempts to have Federal income tax withheld from his wages. In addition, petitioner encouraged his employer (though unsuccessfully) to be uncooperative and disregard respondent's instructions. Furthermore, petitioner did not cooperate with respondent when his 1981 and 1982 tax years came under investigation. Indeed, respondent was never allowed access to petitioner's records until just before the trial of this case. Petitioner has attempted to justify his failure to cooperate with respondent and his noncompliance with the internal revenue laws on numerous grounds. The following is a short, but not exclusive, list *280 of the arguments advanced by petitioner, at one point or another, to justify his noncompliance: 1. Petitioner failed to supply his social security number on the Form W-4 which he filed on January 1, 1981 because of religious objections. 2. In his disagreements with respondent regarding the withholding of Federal income tax from his wages, petitioner claimed he was not an "employee" within the meaning of section 3401(c). 3. On the Form 1040 which petitioner filed for 1981 and during the investigation of his 1981 and 1982 tax liabilities, he refused to provide any information at all (other than his name, address, and filing status) because, according to petitioner, to do so would violate his rights under the Fourth and Fifth Amendments to the Constitution of the United States. 4. In his numerous letters to politicians, judges, Internal Revenue Service employees, and other "patriots," petitioner claimed that he was a "freeman," rather than a taxpayer, and was, therefore, not subject to the provisions of the Internal Revenue Code. 5. In these same letters, petitioner also claimed that he received his wages in exchange for property (his labor) and, therefore, the amount he *281 received was a return of capital and not income. 6. At trial, petitioner claimed that, since the Federal system of tax collection depends, in large part, on voluntary compliance and he had not volunteered to be subject to tax, the Internal Revenue Code did not apply to him. 7. On brief, petitioner claimed that, before he could be subjected to the provisions of the Internal Revenue Code (i.e., filing requirements), he had to be made "liable" for taxes and the only way he could be made "liable" for taxes was for respondent to assess such taxes. Since respondent has not yet assessed any taxes against petitioner, he concluded that he was not required to file a return or pay taxes. All of petitioner's arguments are frivolous. Most have been soundly rejected by this Court. See Abrams v. Commissioner,82 T.C. 403 (1984); Rowlee v. Commissioner,80 T.C. 1111 (1983). The remainder are so clearly without merit that we decline to dignify them with any sort of answer. Despite the frivolous "tax protestor" arguments advanced by petitioner, he vehemently denies that he is a "tax protestor." He claims that he sincerely believes that he cannot be constitutionally *282 subjected to Federal income taxation and further claims that he is entirely willing to pay any tax which he believes is constitutionally proper. At several points in his briefs, petitioner quotes from and relies on United States v. Burton,737 F.2d 439 (5th Cir. 1984). The Burton case involved an appeal by a taxpayer from a conviction for willful failure to file income tax returns and filing false withholding forms. The Fifth Circuit held improper the District Court's instruction to the jury that, as a matter of law, a good faith belief that wages were not income was not a defense to such charges. The court pointed out that it had previously allowed the jury, as the trier of facts, to decide the question of whether the taxpayer held a good faith belief that wages were not taxable income. In the instant case, this Court as the trier of the facts, from the record as a whole including petitioner's testimony, concludes that petitioner did not have a good faith belief that he was not required by law to file a return and to pay taxes on his income, nor did he have a good faith belief that he had no taxable income and owed no taxes for 1981 and 1982. Much of petitioner's *283 testimony and argument shows that he did know he owed and was obligated to pay taxes. Any statements to the contrary which he made we do not believe and any arguments to the contrary which he made we do not consider to be in good faith. It is quite apparent to us that the common ground underlying all of petitioner's ever-changing arguments is his overwhelming desire to evade paying any taxes at all (whether or not constitutional). We simply do not believe that petitioner advanced his arguments sincerely. Instead, we believe petitioner advanced these arguments in an effort to evade taxes and conceal his true motivations. Thus, in this case, petitioner's efforts to forestall the collection of tax by raising frivolous and affectational arguments are, by themselves, further indicia of fraud. In sum, we conclude that petitioner's entire course of conduct, from his submission of fraudulent withholding statements to his failure to file tax returns to his failure to cooperate with respondent's investigation of his income taxes, clearly evidence a specific intent to evade taxes known to be owing through misrepresentation and concealment. On this record, we hold that respondent has *284 shown by clear and convincing evidence that petitioner's entire underpayment of tax in each of the years 1981 and 1982 was due to fraud with intent to evade tax. We, therefore, hold that petitioner is liable for an addition to tax under section 6653(b) for 1981 and additions to tax under section 6653(b)(1) and section 6653(b)(2) for 1982. Since we have upheld respondent's determination that petitioner is liable for additions to tax for fraud, we need not reach respondent's alternative contention that petitioner is liable for additions to tax under section 6653(a)(1), section 6653(a)(2), and section 6651(a)(1). Section 6654 provides for an addition to tax in the case of an underpayment of estimated tax. Petitioner has the burden of proving that respondent's determination of an addition to tax under section 6654 is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Recklitis v. Commissioner,91 T.C. 874, 913 (1988); Grosshandler v. Commissioner75 T.C. 1, 20-21 (1980); Rule 142(a). Although there are certain statutory circumstances *285 under which the section 6654 addition will not be imposed, there is no "reasonable cause" exception to the imposition of the addition for failure to make estimated tax payments. United States v. Steck,295 F.2d 682, 685 (10th Cir. 1961); Judge v. Commissioner,88 T.C. 1175 (1987). Petitioner made no showing that he was within one of the statutory exceptions. Furthermore, it is clear from the record that no amounts were withheld from petitioner's salary in 1981 and that he made no estimated tax payments in 1981. Therefore, we sustain respondent's determination of an addition to tax under section 6654. The final issue is whether petitioner is liable for an addition to tax under section 6661 for his 1982 tax year. Petitioner bears the burden of proving he is not liable for this addition to tax. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Section 6661(a) provided that, if there is a substantial understatement of income tax for any taxable year, the taxpayer will be liable for an addition to tax equal to 10 percent of the underpayment attributable to such understatement. [7] An understatement is defined as the excess *286 of the amount of tax required to be shown on the taxpayer's return (his correct tax liability as ultimately determined) over the amount of tax imposed which was shown on the return. Section 6661(b)(2)(A). An understatement is considered substantial if it exceeds the greater of 10 percent of the taxpayer's correct tax liability or $ 5,000. Section 6661(b)(1)(A). The amount of the understatement is reduced if there is substantial authority for the taxpayer's treatment of an item, or if the taxpayer adequately discloses the relevant facts affecting the tax treatment of an item on his return or in a statement attached to the return. Section 6661(b)(2)(B). In the instant case, petitioner did not file an income tax return for 1982 and, therefore, the amount considered *287 as shown on his return is zero. Section 1.6661-2(d)(2), Income Tax Regs.[8] Thus, the amount of petitioner's understatement for 1982 is his correct tax liability. It appears that petitioner's understatement of his tax liability for 1982 exceeds $ 5,000, and clearly his understatement is in excess of 10 percent of the zero amount shown on his return. Therefore, a substantial understatement of tax liability exists for 1982. It is obvious that petitioner did not adequately disclose the facts surrounding his failure to report any income for 1982 since he did not even file an *288 income tax return for 1982. It is equally obvious that no substantial authority exists for petitioner's position. Therefore, we sustain respondent's determination that petitioner is liable for the addition to tax under section 6661 for 1982. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * 50-percent of the interest due on the portion of deficiency attributable to fraud.↩
2. Egner v. Commissioner,T.C. Memo. 1984-473↩. 3. Egner v. Commissioner,T.C. Memo. 1984-473↩.
4. Sec. 7214 provides that if any officer or employee of the United States is guilty of committing certain acts, such as extortion or willful oppression under color of law or knowingly demanding other or greater sums than authorized by law, in connection with any revenue law of the United States, the officer or employee shall be dismissed or discharged from office or employment and shall be fined not more than $ 10,000 and imprisoned for not more than 5 years, or both. Sec. 7214(a). ↩
5. During the audit of his 1979 and 1980 tax years, petitioner would not agree to an office examination. Petitioner insisted that his records were too voluminous and that a field examination was required.↩
6. As applicable to the year 1981, sec. 6653(b) provides: (b) FRAUD. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse. In sec. 325(a) of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA 1982), Pub. L. 97-248, 96 Stat. 616, Congress amended sec. 6653(b) to read as follows: (b) FRAUD. -- (1) In general. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. (2) Additional amount for portion attributable to fraud. -- There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601 -- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to fraud, and (B) for the period beginning on the last day prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax). The amendments made by sec. 325(a) apply with respect to taxes, the last day prescribed for payment of which (determined without regard to any extension), is after September 3, 1982. The last day prescribed for payment of petitioner's 1982 tax liability was April 15, 1983. Thus, section 6653(b)↩, as amended by TEFRA 1982, applies to petitioner's 1982 tax year.
7. Section 8002 of the Omnibus Reconciliation Act of 1986, 100 Stat. 1951 (OBRA 1986), increased the percentage rate of the addition to tax under section 6661 to 25 percent. Pallottini v. Commissioner,90 T.C. 498↩ (1988). The increase applies to additions assessed after the date of enactment of OBRA 1986, October 21, 1986. Respondent has not attempted to assert the 25 percent rate in this case.
8. The amount of tax shown on the return is determined without regard to the credit under sec. 31 for taxes withheld from a taxpayer's wages. Sec. 1.6661-2(d)(5)(i), Income Tax Regs. Thus, the amounts which were withheld from petitioner's salary in 1982 do not serve to reduce the amount of his understatement. However, petitioner's withholding credits must be subtracted from the "understatement" to arrive at the "amount of any underpayment" for the calculation of the section 6661 addition. Woods v. Commissioner,91 T.C. 88↩ (1988).