T.C. Memo. 2017-152

UNITED STATES TAX COURT

MARGARET KNOWLES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21172-14.                    Filed August 7, 2017.

<u>Cole R. Sheridan</u>, for petitioner.[1]

<u>Michael T. Shelton</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>:  Respondent determined the following deficiencies and

penalties with respect to petitioner's Federal income tax for tax years 2008-12

(years at issue):

_____

[1]<u>James T. Runyon</u> represented petitioner at trial.

[*2]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalties Sec. 6662(a) | Sec. 6663 |
|------|-----------|-----------|-----------|-----------|
| 2008 | $62,205 | $15,551 | $4,315 | -0- |
| 2009 | 38,416 | 9,604 | 1,740 | -0- |
| 2010 | 58,306 | 14,576 | 2,317 | $13,899 |
| 2011 | 45,618 | -0- | -0- | 22,877 |
| 2012 | 11,924 | -0- | -0- | 8,943 |

For tax years 2010-12 respondent determined as an alternative to the fraud penalty that petitioner was liable for an accuracy-related penalty under section 6662(a) for negligence, or alternatively, for a substantial understatement of income tax. Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

After concessions the issues for our consideration are: (1) whether petitioner substantiated expenses underlying deductions on her Schedules C, Profit or Loss from Business, for tax years 2008-11; (2) whether petitioner substantiated items underlying deductions on Schedules A, Itemized Deductions, for tax years 2011-12; (3) whether petitioner failed to report taxable income for tax years 2008-

**[*3]** 09; (4) whether petitioner's filing status for tax years 2011-12 is single or married filing separately; (5) whether petitioner is liable for the section 6663(a) fraud penalty for 2010-12; (6) whether petitioner is liable for the section 6662(a) accuracy-related penalty for tax years 2008-09 as well as for portions of underpayments for tax years 2010-12 that are not attributable to fraud; and (7) whether petitioner is liable for the section 6651(a)(1) addition to tax for failing to file timely returns for 2008-10.

## FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein. Petitioner resided in Wisconsin when she filed her timely petition.

<u>Petitioner's Education and Career</u>

Petitioner is a psychiatrist. She graduated from John Hopkins Medical School and completed her residency at the University of Chicago. On April 15, 2002, the State of Illinois issued petitioner a medical license which expired on July 31, 2011, and has not been renewed. On December 21, 2010, the State of Wisconsin issued petitioner a medical licence which expired on October 31, 2015, and has not been renewed.

**[*4]** From January 2004 through December 2010 petitioner practiced medicine as an independent contractor for Associates in Psychiatric Medicine (APM) at its offices in Glenview, Illinois. Pursuant to her contract with APM, APM provided her with office space, office furniture, and administrative support services, including billing to patients and insurance companies. APM collected and deposited into its bank all proceeds from patients petitioner treated at APM's offices. APM kept 40% of those proceeds, distributing the remaining 60% to petitioner for her services. Each year APM issued her a Form 1099 MISC, Miscellaneous Income, for the 60% of fees distributed to petitioner.

Petitioner reported expenses related to the APM contract totaling $143,573, $155,703, $224,432, and $11,599 for tax years 2008-11, respectively, on her Schedules C. Petitioner's 2011 expenses reported on her Schedule C related to services she rendered at APM's offices in 2010 but did not receive payment for until 2011. Petitioner reported gross receipts of $214,888, $261,629, $314,237, and $10,384 for tax years 2008-11, respectively, on her Schedules C. For tax year 2010 she reported $195,430 as office expenses. Respondent allowed a deduction for $142,249 of these office expenses.

During 2011 and 2012 petitioner worked for Ministry Medical Group and Ministry Health Care Group (Ministry) in Wisconsin. Her salary was above

[*5] $200,000 for each of those years. She provided Ministry with a temporary address in Wisconsin. Petitioner entered into a relocation assistance agreement with Ministry on October 19, 2010. She submitted expenses for temporary housing. To substantiate the expenses, petitioner provided Ministry with checks for rent and a security deposit made out to Louise Gustafson, her mother-in-law.

During early January 2011 petitioner and her husband lived at Mrs. Gustafson's lake house in Wisconsin. Petitioner provided Ministry a false rental agreement between her and Mrs. Gustafson. No rental agreement existed, and Mrs. Gustafson did not charge petitioner and her husband rent.

Big Dog Farms

Since petitioner was a young child, she has been an amateur horsewoman. Petitioner sold horses before she started Big Dog Farms (BDF) in Wisconsin, and she thought she could sell horses as a business. Petitioner started BDF for the purpose of breeding, selling, and showing horses. Petitioner began operating BDF no later than 2005. BDF's operations ceased in 2011. From 2005-11 petitioner did not maintain a separate bank account for BDF. BDF reported losses as follows:

[*6]

| Year | Net loss |
|------|----------|
| 2005 | ($30,207) |
| 2006 | (49,345) |
| 2007 | (58,556) |
| 2008 | (149,060) |
| 2009 | (93,500) |
| 2010 | (114,785) |
| 2011 | (86,466) |
| Total | (581,919) |

Petitioner owned a horse, Gossip Girl, which she entered in various horse shows. For 2011 there are invoices for the cost of shipping horses. For tax years 2008-11 petitioner reported expenses related to BDF as follows on her Schedules C:

| Year | Expenses |
|------|----------|
| 2008 | $149,715 |
| 2009 | 93,500 |
| 2010 | 115,500 |
| 2011 | 86,466 |

Petitioner reported gross receipts of $655 and $715 for tax years 2008 and 2010, respectively.

**[*7]** <u>Grill Cleaning Business</u>

For tax years 2010 and 2011 petitioner reported expenses related to a grill cleaning business on her Schedules C. Schedule C for tax year 2010 reports the business as Momentum Enterprises. Petitioner reported expenses of $17,050 and $14,000 for this business on her 2010 and 2011 Schedules C, respectively.

<u>Itemized Deductions</u>

Petitioner claimed itemized deductions on her Schedules A related to real estate taxes paid, charitable contributions, and unreimbursed employee expenses for tax years 2011 and 2012.

On petitioner's 2011 and 2012 income tax returns she claimed deductions of $3,000 and $7,026, respectively, for real estate taxes paid. Respondent disallowed these deductions in full.

On petitioner's 2011 and 2012 income tax returns she claimed deductions of $5,000 and $12,589, respectively, for charitable contributions. Respondent disallowed these deductions in full.

On petitioner's 2011 return she claimed a deduction of $4,200 for unreimbursed employee expenses. Respondent disallowed this deduction in full.

[*8] Unreported Income

During tax years 2008 and 2009 petitioner deposited six checks into her personal checking account. In 2008 she deposited checks for $3,000 and $2,000, and in 2009 she deposited checks for $975, $40, $1,600 and $1,112 into her personal checking account. Petitioner failed to report these amounts as taxable income on her 2008 and 2009 returns.

Filing Status

On January 29, 2011, petitioner married James Gustafson in Lake County, Illinois. At this time petitioner was employed by Ministry. On January 30, 2011, petitioner submitted a benefit change form to add Mr. Gustafson to her medical plan. During 2011-13 petitioner made payroll contributions for health insurance consistent with the premium charged for an employee spouse plan.

On or about October 8, 2013, petitioner submitted a benefits change form to her employer to remove Mr. Gustafson as her spouse and drop his medical coverage effective January 1, 2014. On December 17, 2014, petitioner submitted a benefits change form to her employer to remove Mr. Gustafson as the beneficiary of her life insurance policy.

Petitioner filed her 2011 and 2012 tax returns as a single filer. When respondent audited petitioner's returns, she provided the revenue agent with a

**[*9]** copy of a judgment for dissolution of marriage from the 19th Judicial Circuit Court of Lake County, Illinois (Lake County court), showing that petitioner had divorced Mr. Gustafson in late 2011. The Lake County court has no record of her divorce. Mr. Gustafson did not participate in any divorce proceedings in the Lake County court. The dates on the documents petitioner provided the revenue agent are inconsistent with the internal practice of the Lake County court. On petitioner's document the date of the "filed" stamp is earlier than the date of the judge's signature, which contradicts the court's practice to stamp a document filed on the day the judge signs it or at a later date. The case numbers shown on the decree belong to a couple other than petitioner and Mr. Gustafson. The document has microfilm markings, and documents for 2011 were not microfilmed. The petition for divorce filed in the Lake County court included the signature of Mr. Gustafson, but he did not sign the document.

On the date of trial petitioner and Mr. Gustafson were still married. Mr. Gustafson had filed petitions for divorce in the Circuit Court, Family Court Branch 3, for Portage County, Wisconsin (Portage County circuit court), in 2015 and 2016. He filed a petition again in 2016 because the 2015 case was dismissed. In August 2015 petitioner signed under penalty of perjury a financial disclosure

[*10] statement with the Portage County circuit court. This document reports September 2014 as the date of separation.

## Filing of Tax Returns

Petitioner did not file timely her tax returns for tax years 2008-10. She filed her 2008-10 returns on August 10, 2011, December 15, 2011, and March 1, 2012, respectively. Petitioner prepared her own returns. Her Forms 1040, U.S. Individual Income Tax Return, for 2011 and 2012 requested refunds of $41,392 and $8,551, respectively.

## Audit of Petitioner's Returns

Respondent issued numerous information document requests and one summons to petitioner. Respondent's revenue agent had difficulty setting up a meeting with her. It took approximately 10 months to schedule a meeting. Meetings were often rescheduled or postponed. Petitioner did not provide the agent with documents that would support the returns. Petitioner told the revenue agent that she filed her 2008 return late because of the death of her father in 2009. Petitioner's father died on April 3, 2008.

[*11]                                          OPINION

I.      Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). The taxpayer likewise bears the burden of proving his or her entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. Under section 7491(a), in certain circumstances the burden of proof may shift from the taxpayer to the Commissioner. Petitioner has not claimed or shown that she meets the specifications of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

II.     Schedules C Expenses

Deductions are a matter of legislative grace, and a taxpayer must prove his or her entitlement to a deduction. INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 162(a) permits a taxpayer to deduct ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business. An ordinary expense is one that

[*12] commonly or frequently occurs in a taxpayer's business, Deputy v. duPont, 308 U.S. 488, 495 (1940), and a necessary expense is one that is appropriate and helpful in carrying on the taxpayer's business, Welch v. Helvering, 290 U.S. at 113. The expense must directly connect with or pertain to the taxpayer's business. Sec. 1.162-1(a), Income Tax Regs. A taxpayer's general statement that her expenses were incurred in pursuit of a trade or business is not sufficient to establish that the expenses had a reasonably direct relationship to any such trade or business. Ferrer v. Commissioner, 50 T.C. 177, 185 (1968), aff'd per curiam, 409 F.2d 1359 (2d Cir. 1969).

A.    Associates in Psychiatric Medicine

For tax years 2008-11 petitioner claimed deductions for numerous expenses related to her medical practice at APM. Her contract with APM covered her office space, office furniture, and administrative support services expenses. Her Schedules C reported car and truck expenses, utilities, office expenses, answering service expenses, supplies, and legal and professional expenses. Petitioner offered no testimony explaining how these expenses were work related and provided no evidence substantiating these expenses. Respondent's disallowance of expense deductions allegedly related to petitioner's medical practice at APM is sustained.

**[\*13]** B.     Big Dog Farms

A taxpayer may not fully deduct expenses for an activity under section 162 if the activity is not engaged in for profit.  Sec. 183(a), (c).  If an activity is not engaged in for profit, no deduction attributable to that activity is allowed except to the extent provided by section 183(b).  Sec. 183(a).  Section 183(b) generally limits deductions for an activity that is not engaged in for profit to the amount of income that the activity generates.  See also sec. 1.183-2(a), Income Tax Regs.

To be engaged in a trade or business within the meaning of section 162(a), an individual taxpayer must be involved in the activity with continuity, regularity, and the primary purpose of deriving a profit.  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  Deciding whether a taxpayer is carrying on a trade or business requires an examination of all of the facts in each case.  Id. at 36.

A taxpayer must conduct the activity with the requisite profit motive or intent for the activity to be considered a trade or business.  See id. at 35-36; see also Churchman v. Commissioner, 68 T.C. 696, 701 (1977).  The taxpayer generally bears the burden of proving that the requisite profit objective existed. Westbrook v. Commissioner, 68 F.3d 868, 876 (5th Cir. 1995), aff'g T.C. Memo. 1993-634; see also Rule 142(a); Foster v. Commissioner, T.C. Memo. 2012-207. Although a reasonable expectation of profit is not required, the taxpayer's profit

[*14] objective must be actual and honest. Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer has an actual and honest profit objective is a question of fact to be answered from all of the relevant facts and circumstances. Hastings v. Commissioner, T.C. Memo. 2002-310; sec. 1.183-2(a), Income Tax Regs.

The pertinent regulations set forth a nonexhaustive list of factors that may be considered in deciding whether the taxpayer had a profit objective. These factors include: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.; see also Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981). No single factor or group of factors is determinative. Golanty v. Commissioner, 72 T.C. at 426. While the focus of the test for whether

[*15] a taxpayer engaged in an activity with the intent to make a profit is the subjective intent of the taxpayer, greater weight is given to objective facts than to the taxpayer's mere statement of his or her intent. Sec. 1.183-2(a), Income Tax Regs.; see also Stasewich v. Commissioner, T.C. Memo. 2001-30. A final determination is made only after a consideration of all of the relevant facts and circumstances.

We do not believe it necessary to analyze each of the factors enumerated in section 1.183-2(b), Income Tax Regs., to determine whether petitioner operated BDF with an actual and honest objective of making a profit. Rather, we focus on the factors we believe more important and applicable in this case.

### 1. Manner in Which Taxpayer Carries On Activity

Carrying on an activity in a businesslike manner may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. There is no evidence that petitioner maintained books and records or conducted BDF in a manner similar to that of a profitable horse enterprise. BDF did not have a separate bank account. Petitioner's business plan is summary, and there is no evidence to show when the plan was written.

**[\*16]**     2.     Expertise of the Taxpayer or Advisors

Consultation with experts may indicate a profit motive. Id. para. (b)(2). Petitioner testified that many of the expenses pertaining to the farm were used to pay "the professionals", including veterinarians, trainers, and riders. Petitioner did not identify these professionals or produce any evidence that supports a finding that she hired professionals to advise her with respect to the activity.

3.     Expectation of Appreciation in Value

An expectation that assets used in an activity may appreciate in value may indicate a profit motive. Id. para. (b)(4). Petitioner provided no evidence regarding the assets held by BDF and whether these assets are expected to appreciate. She provided an appraisal of one horse, Gossip Girl, but the appraisal is not dated.

4.     History of Income or Losses

A history of substantial losses may indicate that the activity is not conducted for profit. See id. para. (b)(6). Petitioner reported a net loss for every year of BDF's operation. We have held that the startup phase of horse breeding may be 5 to 10 years. See Engdahl v. Commissioner, 72 T.C. 659, 669 (1979). BDF was allegedly in the business not only of breeding horses but also of selling and showing horses, and petitioner testified that she sold several horses for profit

[*17] before BDF opened. BDF, however, had substantial losses all of its years of operation.

### 5. The Taxpayer's Financial Status

Substantial income from sources other than the activity may indicate that an activity is not engaged in for profit, particularly if the losses from the activity generate substantial tax benefits and there are personal or recreational elements involved. Sec. 1.183-2(b)(6), Income Tax Regs. Petitioner is a medical doctor who had significant income during the tax years at issue, and the losses from BDF generated substantial tax benefits for her.

### 6. Conclusion

After considering all the applicable facts and circumstances, we conclude that petitioner did not operate BDF with the actual and honest objective of making a profit. Petitioner is not entitled to deductions for her BDF-related expenses that she reported on her Schedules C for 2008-11.

### C. Grill Cleaning Business

For tax years 2010 and 2011 petitioner reported numerous expenses related to her alleged grill cleaning business, Momentum Enterprises. Petitioner testified that Momentum Enterprises was a business but that her adviser told her not to claim it as one. Petitioner did not produce evidence supporting these expenses.

[*18] However, petitioner provided two bills of sale for a trailer that was purportedly used for the grill cleaning business. The bills of sale appear to be for the same trailer, and it appears that at least one of the bills of sale may have been altered. Petitioner conceded this issue in her posttrial brief. Respondent's disallowance of deductions for these expenses is sustained.

III.   Schedule A Deductions

   A.   Real Estate Taxes

Section 164(a)(1) allows a deduction for real property taxes paid. Petitioner claimed deductions for real estate taxes paid of $3,000 and $7,026 for tax years 2011 and 2012, respectively. Respondent disallowed her deductions for both 2011 and 2012 in full. Petitioner produced printouts from a Portage County, Wisconsin website showing property taxes due for a parcel of land in Amherst, Wisconsin. Petitioner provided no evidence to show that she paid these property taxes. Respondent's disallowance of these deductions is sustained.

   B.   Charitable Contributions

A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary. Sec. 170(a)(1). For tax year 2011 petitioner claimed a charitable contribution deduction of $5,000 for the contribution of designer clothing to the Log Church. For tax year 2012 petitioner

[*19] claimed a $12,589 deduction for the contribution of cash to unidentified recipients.

For noncash contributions, a taxpayer must maintain for each contribution a receipt from the donee showing the name of the donee, the date and location of the contribution, and a description of the donated property in detail reasonably sufficient under the circumstances. See sec. 1.170A-13(b)(1), Income Tax Regs. In addition to the aforementioned requirements, for donations of property other than money in excess of $500 but less than $5,001, a taxpayer must substantiate the following: the manner of acquisition, the proper date of acquisition, and the cost or the basis of the donated property. Id. para. (b)(3). Deductions are not allowed for cash contributions unless the donor maintains as a record of such contribution a bank record or a written communication from the donee showing the name of the donee organization, the date of the contribution, and the amount of the contribution. Sec. 170(f)(17).

Petitioner did not substantiate her charitable contributions for tax years 2011 and 2012. Respondent's disallowance of these deductions is sustained.

C.     Unreimbursed Employee Expenses

For 2011 petitioner claimed a deduction of $4,200 for unreimbursed employee expenses. A taxpayer must show the relationship between the

[*20] expenditures and his or her employment.  See Joseph v. Commissioner, T.C. Memo. 2005-169.  For such expenses to be deductible, the taxpayer must not have the right to reimbursement from his or her employer.  See Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533.  Petitioner did not substantiate these expenses or show that they were not reimbursable by her employer.  Respondent's disallowance of this deduction is sustained.

IV.    Unreported Income

Respondent contends that petitioner failed to report income of $5,000 and $3,727 for tax years 2008 and 2009, respectively.[2]  Respondent made these adjustments using the specific-item method of reconstructing income.[3]  The specific-item method is an indirect method of income reconstruction that consists of evidence of specific amounts of income received by a taxpayer and not reported on the taxpayer's return.  See Estate of Beck v. Commissioner, 56 T.C. 297, 353-354, 361 (1971).  Specific items may be evidenced by canceled checks.  See

_____

[2]Respondent has made a concession and adjustments since issuing the notice of deficiency.

[3]The Commissioner must establish a rational foundation for the assessment to preserve the presumption of correctness.  See Zuhone v. Commissioner, 883 F.2d 1317, 1325 (7th Cir. 1989) (citing Ruth v. United States, 823 F.2d 1091, 1094 (7th Cir. 1987)), aff'g T.C. Memo. 1988-142.  Respondent has established a rational foundation.

[*21] <u>Schwarz v. Commissioner</u>, T.C. Memo. 1981-94.  Petitioner deposited six checks into her personal checking account that were not included in her taxable income.  Gross income, for purposes of calculating taxable income, includes all income from whatever source derived.  Sec. 61(a).  Petitioner provided no evidence to show these six checks were not taxable income when she received them.  Respondent's inclusion of these six checks in petitioner's taxable income is sustained.

V.    <u>Filing Status</u>

A taxpayer's filing tax status determines the rate of income tax owed by a taxpayer.  <u>See</u> sec. 1.  Married individuals may elect to file a joint return or separate returns.  <u>See</u> secs. 1(d), 6013(a).  Generally, marital status is determined at the close of a taxable year.  Sec. 7703(a).  An individual legally separated from his or her spouse under a decree of divorce or of separate maintenance shall not be considered married.  Sec. 7703(a)(2).

There is no credible evidence that petitioner and Mr. Gustafson were not married at the end of tax years 2011 and 2012.  Mr. Gustafson testified credibly that he is still married to petitioner.  Under penalty of perjury petitioner signed a financial disclosure statement reporting her separation from her husband as of September 2014.  Petitioner's divorce documents are not records of the Lake

[*22] County court. Petitioner's employment records for 2011 and 2012 include Mr. Gustafson as her spouse for the purpose of employee benefits. We conclude that petitioner's correct filing status for tax years 2011 and 2012 is married filing separately.

VI. Fraud Penalty

Fraud is an intentional wrongdoing on the part of a taxpayer with the specific purpose to evade a tax believed to be owed. Sadler v. Commissioner, 113 T.C. 99, 102 (1999). The penalty in the case of fraud is a civil sanction provided primarily as a safeguard for protection of revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938); Sadler v. Commissioner, 113 T.C. at 102. The Commissioner has the burden of proving by clear and convincing evidence an underpayment for each year at issue and that the underpayment is due to fraud. Sec. 7454(a); Rule 142(b). The Commissioner must show that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes. Katz v. Commissioner, 90 T.C. 1130, 1143 (1988).

If the Commissioner establishes that any portion of the underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud and subject to a 75% penalty, unless the taxpayer establishes that some part

[*23] of the underpayment is not attributable to fraud. Sec. 6663(a) and (b). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 516 (1992). Fraud may be proved by circumstantial evidence and inferences drawn from the facts because direct proof of a taxpayer's intent is rarely available. Niederinghaus v. Commissioner, 99 T.C. 202, 210 (1992). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).

Fraudulent intent may be inferred from various kinds of circumstantial evidence, or "badges of fraud", including, but not limited to, the consistent understatement of income, filing false documents, including false income tax returns, engaging in illegal activities, concealing assets, engaging in extensive dealings in cash, implausible or inconsistent explanations of behavior, inadequate records, and failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), aff'g T.C. Memo. 1984-25; Parks v. Commissioner, 94 T.C. 654, 664-665 (1990). The existence of any one factor is not dispositive, but the existence of several factors may be persuasive

[*24] circumstantial evidence of fraud. See Niedringhaus v. Commissioner, 99 T.C. at 211; Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989).

We have sustained respondent's determination of petitioner's deficiencies for tax years 2010-12. Respondent has therefore satisfied the burden of proving an underpayment of tax for tax years 2010-12. We must determine whether petitioner's underpayments were due to fraud.

A.    Tax Year 2010

Respondent contends that petitioner claimed false deductions of $53,181 for office expenses related to APM on her 2010 Schedule C. Respondent contends that petitioner claimed a deduction for office expenses related to APM that she did not pay. For 2010 respondent allowed petitioner to claim some APM-related office expenses as deductions, but not all of them. We agree that petitioner's expenses were not substantiated, but there is not clear and convincing evidence that petitioner had fraudulent intent with respect to this deduction. Her lack of records does not necessarily mean petitioner inflated those expenses with an intent to avoid Federal income tax. See Ericson v. Commissioner, T.C. Memo. 2016-107, at *46. There were other unsubstantiated expenses on petitioner's Schedule C for 2010 that were not subject to the fraud penalty. We do not sustain the fraud penalty for tax year 2010.

[*25]  B.     Tax Years 2011-12

For tax years 2011-12 respondent contends that petitioner claimed false deductions that offset her income and caused underpayments and a false filing status that reduced her tax rate and caused underpayments.

Filing false documents with the Internal Revenue Service constitutes an "affirmative act of misrepresentation sufficient to justify the fraud penalty." Zell v. Commissioner,  763 F.2d 1139, 1146 (10th Cir. 1985), aff'g T.C. Memo. 1984-152; see also Ernle v. Commissioner, T.C. Memo. 2010-237, slip op. at 9.  For tax years 2011-12 petitioner filed her tax returns as a single filer, even though she was still married.  In support of her filing status of single, petitioner provided the revenue agent with fraudulent documents pertaining to her divorce.

Petitioner repeatedly underreported her income for all tax years at issue and failed to maintain records to substantiate her deductions.  There was a consistent pattern of overstated deductions.  This pattern of overstating deductions is evidence of fraud.  See Bruce Goldberg, Inc. v. Commissioner, T.C. Memo. 1989-582, 58 T.C.M. (CCH) 519, 529 (1989) ("[F]raud may sometimes be inferred from a pattern of overstating deductions[.]").

Petitioner was not a credible witness.  Her testimony was inconsistent.  She was uncooperative during the audit process.  Petitioner testified that she gave the

[*26] revenue agent documents supporting her returns, but the revenue agent credibly testified that she did not. The record includes documents which are false. The maxim "falsus in uno, falsus in omnibus"[4] applies to the actions and testimony of petitioner. Her testimony conflicts with other testimony and evidence. If she was not truthful about her filing status, it leads us to conclude that she was not truthful about the various deductions she claimed for tax years 2011-12.

For tax years 2011-12 petitioner claimed numerous deductions on Schedules A and C, which resulted in her requesting a refund. Petitioner's repeated concealment of income by overstating deductions exemplifies a pattern of fraudulent behavior, and her explanations are implausible and unpersuasive. See McGraw v. Commissioner, 384 F.3d 965, 971 (8th Cir. 2004) ("[A] consistent pattern of sizeable underreporting of income, inadequate records, and unsatisfactory explanations for such underreporting of income also can establish fraud."), aff'g Butler v. Commissioner T.C. Memo. 2002-314.

Petitioner provided Ministry with false checks and a false rental agreement in order to receive reimbursement for relocation expenses. A taxpayer's willingness to defraud another in a business transaction may point towards a

---

[4]False in one thing, false in all. Black's Law Dictionary 720 (10th ed. 2014).

[*27] willingness to defraud the Government. Solomon v. Commissioner, 732 F.2d 1459 (1984), aff'g T.C. Memo. 1982-603.

Respondent has shown by clear and convincing evidence that petitioner is liable for the fraud penalty under section 6663 for tax years 2011-12. Petitioner is not liable, in accordance with respondent's alternative position, for negligence or substantial understatement penalties under section 6662(a) for tax years 2011-12.

## VII. Section 6662(a) Penalty

Section 6662(a) imposes a 20% penalty on any portion of an underpayment of tax attributable to, among other things, negligence or disregard of rules or regulations. See also sec. 6662(b)(1). Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code, including a failure to keep adequate books and records and/or to substantiate items properly. See sec. 6662(c); see also sec. 1.6662-3(b)(1), Income Tax Regs. Negligence has also been defined as a lack of due care or failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), aff'g 92 T.C. 1 (1989). The term "disregard" indicates any careless, reckless, or intentional disregard. See sec. 6662(c).

The Commissioner bears the burden of production with respect to the applicability of an accuracy-related penalty. See sec. 7491(c). To satisfy this

[*28] burden, the Commissioner must produce sufficient evidence showing that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner has met the burden of production, the burden of proof remains on the taxpayer, including the burden of proving that a penalty is inappropriate. See id. at 446-447.

Respondent has met the burden of production and has established that petitioner failed to maintain adequate records for her claimed deductions on Schedules A and C for tax years 2008-10 and that she failed to report income for tax years 2008 and 2009. Petitioner has not shown any reasonable cause for those failures. See sec. 6664(c)(1). Petitioner is liable for the accuracy-related penalties under section 6662(a) for tax years 2008-10.

## VIII. Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) provides that in the case of failure to file a tax return on the date prescribed for filing (including any extension of time for filing), there shall be added to the tax required to be shown on the return an amount equal to 5% of that tax for each month or fraction thereof that failure to file continues, not exceeding 25% in the aggregate, unless it is shown that the failure to file timely is due to reasonable cause and not willful neglect. See also United States v. Boyle, 469 U.S. 241, 245 (1985); Baldwin v. Commissioner, 84 T.C. 859, 870 (1985);

**[\*29]** <u>Davis v. Commissioner</u>, 81 T.C. 806, 820 (1983), <u>aff'd without published opinion</u>, 767 F.2d 931 (9th Cir. 1985). A taxpayer has the burden of proving that the failure to timely file was due to reasonable cause and not willful neglect. <u>See</u> <u>Higbee v. Commissioner</u>, 116 T.C. at 447.

Under section 7491(c), the Commissioner bears the burden of producing evidence with respect to the liability of the taxpayer for any penalty. <u>See also</u> <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447. Respondent met this burden because petitioner filed her Federal income tax returns late for tax years 2008-10. Once the Commissioner has met this burden, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. at 447. Petitioner failed to demonstrate reasonable cause and lack of willful neglect for filing late returns. <u>See</u> sec. 301.6651-1(c), Proced. & Admin. Regs. Petitioner told the revenue agent that her 2008 return was late because of the death of her father in 2009, but petitioner's father died on April, 3, 2008. Petitioner is therefore liable for the additions to tax under section 6651(a)(1) for tax years 2008-10.

We have considered the other arguments of the parties, and they are either without merit or need not be addressed in view of our resolution of the issues.

**[*30]**  To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.